UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| IN RE DIAL COMPLETE MARKETING AND SALES PRACTICES LITIGATION | CASE NO.  11-md-2263-SM (MDL DOCKET NO. 2263) (ALL CASES) |
| --- | --- |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**Dated:** January 23, 2012

This Consolidated Amended Class Action Complaint (the "Consolidated Complaint"), is brought by individual consumers residing, respectively, in the states of Arkansas, California, Florida, Illinois, Louisiana, Missouri, New Hampshire, New York, Ohio, and Wisconsin, on behalf of themselves and on behalf of statewide classes comprised of similarly-situated consumers residing in each of the foregoing respective states (the "Classes"), alleging claims against Defendant, The Dial Corporation ("Dial" or "Defendant"), under those states' consumer protection/unfair and deceptive trade practices statutes and the respective statutory and common law warranty and unjust enrichment laws (as applicable) of each of those states.  The allegations in this Consolidated Complaint are based upon the personal knowledge of each of the Plaintiffs named herein (collectively, "Plaintiffs") as to themselves and their own actions, and upon information and belief as to all other matters.

## I.  <u>NATURE OF THE ACTION</u>

1.      This action alleges that Dial, throughout the below-defined Class Period, deceptively and misleadingly marketed its Dial Complete branded soaps, including but not limited to Dial Complete Foaming Antibacterial Hand Wash (all such Dial Complete branded products are collectively referred to herein as "Dial Complete" or the "Product") in a uniform manner, to Plaintiffs and the other members of the proposed Classes.

2.      Through its extensive and comprehensive nationwide marketing campaign, Dial intends to, and does, represent to consumers that washing their hands with Dial Complete – which contains the active ingredient triclosan – is more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan.

3.      Dial also deceptively and unfairly represents that using Dial Complete provides special health benefits, including, but not limited to, being over 1,000 times more effective at

killing disease-causing germs than other antibacterial liquid hand soaps, killing 99.99% of bacteria, killing 99.9% of illness-causing bacteria, reducing disease transmission by 50% compared to washing with a plain soap, and killing more germs than any other liquid hand soap.

4.      Dial's omissions and representations about the greater effectiveness and special health benefits of Dial Complete, however, are deceptive and misleading and Dial has taken no meaningful steps to correct consumer misconceptions regarding the Product.

5.      Indeed, there is no competent or reliable evidence that demonstrates that Dial Complete provides any of the results Dial promises and represents when used in community or "real world" settings in which the amount of soap used and amount of time used for washing are not strictly controlled.  Furthermore, there have been several studies suggesting that use of triclosan-containing hand soaps in the home may actually have a negative effect.  Dial thus has no substantiation for the claims it makes regarding the greater effectiveness of its Product and also fails to disclose those Products' risks.

6.      As a consequence of Dial's misrepresentations and/or omissions regarding the greater effectiveness, special health benefits, and risks of Dial Complete – perpetuated through Dial's substantially uniform and extensive nationwide marketing campaign – Plaintiffs and the other members of the Classes have purchased Dial Complete under the false impression that the Product provides a benefit over washing with regular soap and water or with other liquid soaps that do not contain triclosan.

7.      As a result of Dial's extensive and substantially uniform marketing campaign, every consumer who has purchased Dial Complete has been exposed – and continues to be exposed – to substantially the same material misrepresentations and/or omissions, the majority of which are included and prominently displayed on the packaging of all Dial Complete

2

products sold as well as in other forms of mass market advertising, prior to purchasing the Product.

8.      As a result of Dial's misrepresentations and/or omissions regarding Dial Complete, Plaintiffs and other members of the Classes substantially overpaid for the Product. Had Plaintiffs and the other members of the Classes been made aware that the Dial Complete does not provide the promised benefit, they would not have purchased Dial Complete at a premium, but, instead, would have paid substantially less for the Product, not purchased the Product at all, or purchased ordinary, less expensive, soaps that did not contain triclosan.

9.      Plaintiffs bring this action on behalf of themselves and on behalf of other similarly-situated consumers residing in the States of Arkansas, California, Florida, Illinois, Louisiana, Missouri, New Hampshire, New York, and Ohio, and Wisconsin, to halt Dial's dissemination of false and misleading advertising, to correct the false and misleading perception Dial creates in the minds of consumers and the general public, and to obtain redress for Dial Complete purchasers, including Plaintiffs and other members of the Classes.  Plaintiffs allege violations of the consumer protection laws, breach of express and implied warranty and unjust enrichment laws of each of the states in which they respectively reside.

## II.  JURISDICTION AND VENUE

10.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).   The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and Plaintiffs and other members of the Classes are citizens of states different from Defendant.

11.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because many of the acts and transactions giving rise to this action occurred in this District and because Dial is authorized to conduct business in this District, has intentionally availed itself of the laws and

markets within this District through the promotion, marketing, distribution and sale of its products in this District; does substantial business in this District; and is subject to personal jurisdiction in this District.

12.    By Order dated August 19, 2011, the Judicial Panel for Multidistrict Litigation issued an Order transferring all related Dial Complete cases to this Court for coordinated or consolidated pretrial proceedings, further making venue proper in this district pursuant to 28 U.S.C. § 1407.

13.    By their Joint Discovery Plan pursuant to Federal Rule of Civil Procedure 26(f) dated December 19, 2011, the parties agreed to file this Consolidated Amended Class Action Complaint as the operative Complaint in the transferred matter.

### III.   <u>PARTIES</u>

*Plaintiffs*

14.    Eric Capdeville is, and at all times relevant to this action has been, a resident of Gretna, Louisiana.  As such, Plaintiff Capdeville is a Louisiana citizen.  Prior to purchasing the Dial Complete in early 2010, Plaintiff was exposed to and saw Dial's packaging for Dial Complete, described more fully below, and purchased the Dial Complete at various retail stores in the Gretna, Louisiana area, in reliance on those packaging and advertising claims.

15.    Michele Carter, and at all times relevant to this action has been, a resident of St. Louis, Missouri.  As such, Plaintiff Carter is a Missouri citizen.  Prior to purchasing the Dial Complete starting in Summer 2009, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the St. Louis area, in reliance on those packaging and advertising claims.

16.     Marvin Catalan is, and at all times relevant to this action has been, a resident of Benton County, Arkansas.  As such, Plaintiff Catalan is an Arkansas citizen.  Prior to purchasing the Dial Complete in late 2010, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the Benton County area, in reliance on those packaging and advertising claims.

17.     Jonathan Cessna is, and at all times relevant to this action has been, a resident of Miami, Florida.  As such, Plaintiff Cessna is a Florida citizen.  Prior to purchasing the Dial Complete starting in 2008, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the Miami area, in reliance on those packaging and advertising claims.

18.     Bridget Becnel Delivorias, and at all times relevant to this action has been, a resident of LaPlace, Louisiana.  As such, Plaintiff Delivorias is a Louisiana citizen.  Prior to purchasing the Dial Complete in early 2010, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the LaPlace, Louisiana area, in reliance on those packaging and advertising claims.

19.     Amani El-Jandali is, and at all times relevant to this action has been, a resident of San Jose, California.  As such, Plaintiff El-Jandali is a California citizen.  Prior to purchasing the Dial Complete in March 2011, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the San Jose area, in reliance on those packaging and advertising claims.

20.     Michael Feuer is, and at all times relevant to this action has been, a resident of Oceanside, New York.  As such, Plaintiff Feuer is a New York citizen.  Prior to purchasing the Dial Complete in 2010, Plaintiff was exposed to and saw Dial's packaging and advertising

claims, and purchased the Dial Complete at various retail stores in the Nassau County, New York area, in reliance on those packaging and advertising claims.

21.     Karen Finney is, and at all times relevant to this action has been, a resident of Metairie, Louisiana.  As such, Plaintiff Finney is a Louisiana citizen.  Prior to purchasing the Dial Complete in  early 2010, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the Metairie, Louisiana area, in reliance on those packaging and advertising claims.

22.     Alicia Gentile is, and at all times relevant to this action has been, a resident of Los Angeles, California.  As such, Plaintiff Gentile is a California citizen.  Prior to purchasing the Dial Complete in the summer of 2010, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at Ralph's and Target stores in the Los Angeles area, in reliance on those packaging and advertising claims.

23.     Sonia Herrera is, and at all times relevant to this action has been, a resident of Los Angeles, California.  As such, Plaintiff Herrera is a California citizen.  Prior to purchasing the Dial Complete in early 2009, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the Los Angeles area, in reliance on those packaging and advertising claims.

24.     Jenny Marazzi is, and at all times relevant to this action has been, a resident of Cuyahoga County, Ohio.  As such, Plaintiff Marazzi is an Ohio citizen.  Prior to purchasing the Dial Complete in Fall 2003, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the Cuyahoga County area, in reliance on those packaging and advertising claims.

25.     Kami Raleigh is, and at all times relevant to this action has been, a resident of Milford, New Hampshire.  As such, Plaintiff Raleigh is a New Hampshire citizen.  Prior to purchasing the Dial Complete in late 2009/early 2010, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the Milford area, in reliance on those packaging and advertising claims.

26.     Kristina Pearson is, and at all times relevant to this action has been, a resident of Cook County, Illinois.  As such, Plaintiff Pearson is an Illinois citizen.  Prior to purchasing the Dial Complete in the spring of 2011, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at a Target store in Streamwood, Illinois, in reliance on those packaging and advertising claims.

27.     Megan Peterson is, and at all times relevant to this action has been, a resident of Seymour, Wisconsin.  As such, Plaintiff Peterson is a Wisconsin citizen.  Prior to purchasing the Dial Complete in May 2010, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at a Wal-Mart store in Shawano, Wisconsin, in reliance on those packaging and advertising claims.

28.     Eric Terrell is, and at all times relevant to this action has been, a resident of Alameda County, California.   As such, Plaintiff Terrell is a California citizen.   Prior to purchasing the Dial Complete in early 2010, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the Alameda County area, in reliance on those packaging and advertising claims.

29.     Sven Vogtland, and at all times relevant to this action has been, a resident of Miami, Florida.  As such, Plaintiff Vogtland is a Florida citizen.  Prior to purchasing the Dial Complete for several years, Plaintiff was exposed to and saw Dial's packaging and advertising

claims, and purchased the Dial Complete at various retail stores in the Dade County Florida area, in reliance on those packaging and advertising claims.

30.     David Walls is, and at all times relevant to this action has been, a resident of Carterville, Illinois.  As such, Plaintiff Walls is an Illinois citizen.  Prior to purchasing the Dial Complete for several years, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the Carterville area, in reliance on those packaging and advertising claims.

31.     As a result of reviewing Dial's pervasive advertising and packaging the Product, Plaintiffs each believed and understood that using Dial Complete would provide benefits above and beyond washing with regular soap and water.

32.     Based on Dial's representations, Plaintiffs each viewed the package and thereafter purchased the Product at premium prices, in excess of other similar soap products.  As a result of those purchases, Plaintiffs each suffered injury in fact and lost money and/or property as a result of the conduct described herein.

33.     In making their purchasing decision, Plaintiffs each relied upon, among other things, the packaging, advertising and/or other promotional materials which were prepared and approved by Dial and/or its agents and disseminated through its packaging, advertising, and marketing, and/or through local and national advertising media, including Dial's Internet website, media and in-store advertisements and packaging seen at retail outlets, containing the misrepresentations and/or omissions alleged herein.  Had Plaintiffs known the truth about the Product, they would not have purchased Dial Complete at a premium, but, instead, would have paid less for the Product, purchased ordinary soap, or would not have purchased the Product at all.

*Defendant*

34.     Dial is incorporated in the State of Delaware and is headquartered in Scottsdale, Arizona.  Dial is a subsidiary of Henkel AG & Co.KGaA, a Fortune Global 500 company based in Duesseldorf, Germany.  Dial promotes, markets, distributes, and sells a broad range of well-known branded products, including body washes, bar soap, liquid hand soap, and hand sanitizer throughout the United States.

## IV.   <u>SUBSTANTIVE ALLEGATIONS</u>

*Triclosan – The Active Ingredient in Dial Complete*

35.     The active ingredient in Dial Complete is a compound known as triclosan. Triclosan was first patented as an herbicide.  Later, it was found that triclosan had antimicrobial properties useful for hygiene but limited antiviral and antifungal efficacy.  Triclosan was used in some soaps and deodorants since the 1960's and was first used in surgical scrub for medical professionals in the early 1970's.  In more recent years, it has been added to many consumer products, including a wide variety of soaps and body washes, toothpaste, clothing, kitchenware, furniture, and toys.

36.     Triclosan is a chlorophenol, a class of chemicals which is suspected of causing cancer in humans.  While the companies that manufacture products containing triclosan claim that it is safe, the Environmental Protection Agency (EPA) has registered it as a pesticide.  The EPA gives triclosan high scores both as a human health risk and as an environmental risk.

37.     Reports have suggested that triclosan can combine with chlorine in tap water to form chloroform, which the United States Environmental Protection Agency classifies as a probable human carcinogen.  As a result, triclosan was the target of a UK cancer alert, even

though the study showed that the amount of chloroform generated was less than amounts often present in chlorinated drinking waters.

38.     Triclosan also reacts with the free chlorine in tap water to produce lesser amounts of other compounds, like 2,4-dichlorophenol.  Most of these intermediates convert into dioxins upon exposure to UV radiation from the sun or other sources.  Although small amounts of dioxins are produced, there is a great deal of concern over this effect, because some dioxins are extremely toxic and are very potent endocrine disruptors.

39.     Dial's comprehensive advertising campaign also fails to advise and/or warn consumers that repeated use of Dial Complete may cause the development of bacteria that can easily tolerate the concentration of triclosan in the soap and that triclosan kills only some types of bacteria while allowing others to thrive.

40.     In 2004, a study published in *Emerging Infectious Diseases*, entitled "Antibacterial Cleaning Products and Drug Resistance," warned that "more extensive use of triclosan might provide a suitable environment for emergence of antimicrobial drug-resistant species in the community setting."

41.     A 2007 study entitled "Proteomic Analysis of triclosan Resistance in *Salmonella enterica* Serovar Typhimurium" showed that *Salmonella enterica* could develop resistance to triclosan.  Similar studies have shown that other types of bacteria, including *Pseudomonas* and *Mycobacterium* species, can also become resistant to triclosan.

42.     In 2010, the U.S. Food & Drug Administration issued a press release advising consumers that it was reviewing both the safety and effectiveness of products containing triclosan.  The agency said it had no evidence that triclosan in antibacterial soaps and body washes provides any benefit over washing with regular soap and water.  *See* FDA Consumer

Health Information, *triclosan: What Consumers Should Know* (April 2010) *available at* http://www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM206222.pdf ("At this time, the agency does not have evidence that triclosan in antibacterial soaps and body washes provides any benefit over washing with regular soap and water.").

43. In its April 2010 press release, the FDA also emphasized that animal studies have shown that triclosan alters hormone regulation and may contribute to making bacteria resistant to antibiotics. *Id.* ("Animal studies have shown that triclosan alters hormone regulation. However, data showing effects in animals don't always predict effects in humans. Other studies in bacteria have raised the possibility that triclosan contributes to making bacteria resistant to antibiotics.").

44. The European Union banned triclosan from items expected to come into contact with food and set limits on the amount of triclosan that can be in cosmetics. Furthermore, countries including Canada, Norway, Germany, Sweden, Finland, and Japan have restricted, required warnings, or advised consumers against use of products containing triclosan. In August 2009, the Canadian Medical Association asked the Canadian government to ban triclosan use in household products under concerns of creating bacterial resistance and producing dangerous side products (chloroform).

### *The Product and Dial's Advertising*

45. Dial's misleading marketing of Dial Complete begins with a deceptive name – Dial Complete – which implies that it will "completely" protect consumers from germs.

46. Dial's exhaustive advertising campaign builds on this deception. In truth, Dial has no independent, reliable, or competent support for its claims.

47.     Throughout the Class Period, Dial has marketed Dial Complete as being a highly effective and doctor-recommended product, claiming on its current packaging, for example, that it "kills 99.99% of germs" and that it is "Doctor Recommended," among other claims.

 

48.     On its product packaging and in other marketing and advertising literature and related materials, Dial represents that Dial Complete "KILLS MORE GERMS Than Any Other Liquid Hand Soap.

49.     "In    the    "Complete    Facts"    section    of    Dial's    website (http://www.dialcomplete.com/complete_facts.html), Dial represents that the Product is "over 1,000 times more effective at killing disease-causing germs than other antibacterial liquid hand soap."

50.     Further, according to representations in the "A Closer Look" section of its website, Dial represents that Dial Complete also has purportedly "been shown to help reduce disease transmission by 50% compared to washing with a plain soap."  Id.  This is an outright lie,

12

as scientific studies have determined that for the prevention of respiratory and gastrointestinal illnesses, there is no difference between triclosan-containing products such as Dial Complete versus using plain soap.  *Effect of Hand Hygiene on Infectious Disease Risk in the Community Setting: a Meta-Analysis,* American Journal of Public Health, August 2008, Vol. 98, No. 8.

51.     Since 2001, Dial has deceptively and unfairly promoted Dial Complete to consumers – including Plaintiffs and the other members of the Classes –  as having special health benefits, including, but not limited to, being over 1,000 times more effective at killing disease-causing germs than other antibacterial liquid hand soaps, killing 99.99% of bacteria, kill 99.9% of illness-causing bacteria, reducing disease transmission by 50% compared to washing with a plain soap, and killing more germs than any other liquid hand soap.

52.     As part of its misrepresentative manner of marketing, promoting, and selling its Dial Complete Products, Dial also deceptively describes the Product on its websites at http://dialsoap.com and www.dialcomplete.com – both of which are accessible to the general public.

53.     In the prior version of the Fact Sheet on its website(s), Dial describes Dial Complete as "hospital strength formula" that is "over 10 times more effective at killing disease-causing germs than ordinary liquid soap."[1]

54.     Further, on various pages within its website(s), Dial represents that:

a.     "Dial Complete® foaming hand wash kills more germs than any other liquid hand soap" and "Dial Complete® is the #1 doctor recommended liquid hand soap." *See* http://www.dialcomplete.com/index.html;

---

[1] Since the filing of the initial complaints currently comprising this multidistrict litigation, Dial has altered and/or removed various representations from its online Fact Sheets, the current iterations of which are located at http://www.dialcomplete.com/complete_facts.html and http://www.dialcomplete.com/press%20releases/PressRelease1.pdf

b.      "Dial Complete® kills 99.99% of bacteria - more than any other liquid hand soap.  It also has been shown to help reduce disease transmission by 50% compared to washing with a plain soap" and "Dial Complete® is over 10x more effective at killing disease causing germs than ordinary liquid soaps." *See* http://www.dialcomplete.com/a_closer_look.html;

c.      "The Dial Complete® patented formula is over 1,000 times more effective at killing disease-causing germs than other antibacterial liquid hand soaps. It also rinses cleaner than other soaps and kills 99.99% of bacteria.", "Dial® Antibacterial Products Do NOT Increase The Risk of Antimicrobial Resistance.", and "The FDA and European Union, after extensive studies over 10 years, have concluded that there is no convincing evidence that the antibacterial ingredient used in Dial® liquid soaps poses a risk to humans or to the environment by inducing or transmitting antibacterial resistance under current conditions of use. (Eu-CCP,2002,2006)." *See* http://www.dialcomplete.com/complete_facts.html

d.      "Dial Complete® Foaming Hand Wash kills more germs than any other liquid hand wash." *See* http://www.dialcomplete.com/protect.html

55.     Dial deceptively and unfairly claims and implies that Dial Complete's active ingredient, triclosan, enables Dial Complete to outperform other soap products, thus allowing Dial Complete to perform at the superior levels Dial falsely represents, including killing 99.99% of bacteria, killing  99.9% of illness-causing bacteria, being over 1,000 times more effective at killing disease-causing germs than other antibacterial liquid hand soaps, and reducing transmission of diseases by 50% compared to washing with a plain soap.

56.     Dial's misleading marketing campaign also includes a web-based "Campaign for Clean Hands" as reported by *Ad Week*, previously available at www.adweek.com/aw/content_display/news/e3:5d81a139106682771af41P5881c849a,[2]  which features a website with games, puzzles, a hand wash chart and other interactive features.  This promotion includes packaging claiming "Superior Germ Kill."

---

[2] The referenced Uniform Resource Locator ("URL") or Internet address for this document is no longer active or available online and is thus characterized herein as being "previously available." The same is true with respect to earlier incarnations of certain of Dial's online marketing and sales practices.

57.     Furthermore, in another of Dial's promotions for the Product, previously available at http:/www.youtube.com/watch?v=TjuKuREPGMQ, claims that Dial Complete provides "the highest level of germ killing action."

58.     To further its deception, Dial claims that DIAL COMPLETE® is the #1 Doctor recommended antibacterial soap:

| Features | Benefits |
| --- | --- |
| Hospital-strength formula | Over 10 times more effective than its competition at killing disease-causing germs including staph, strep, E. coli and salmonella. |

59.     Dial's other false and misleading messages include uniform, national advertisements that convey the message that Dial Complete provides protections it does not:



60.     Dial also contends, in a video, that Dial Complete, a "one of a kind product," has the highest level of germ-killing action, is the "best-selling foaming hand soap," and that its "5 patents" help "deliver a 100 to 1000 fold increase in germ-killing activity compared to washing with just plain soap and water," as supported by "a number of papers and studies." http://www.youtube.com/watch?v=ZScDDv7z3_8

61.     Dial Complete is known to customers only by the representations and omissions that Dial makes about it.  If, as is the case here, Dial sold other liquid hand soap products, then customers would have no reason to buy Dial Complete, and pay a premium for it, unless and until they are exposed to Dial's messages about the Product's purported properties and benefits.

62.     In other words, given the existence of similar products, long sold by Dial, for washing hands, consumers would purchase the Dial Complete if, and only if, exposed to Dial's pervasive packaging claims and advertising campaign that the Product does something that other soaps do not do – here, specifically, Dial represents that washing with Dial Complete, which contains the active ingredient triclosan, is more effective than washing with regular soap and water or other liquid soaps.

63.     Dial's nationwide advertising campaign for Dial Complete has been extensive and comprehensive throughout the Class Period.  Dial has spent millions of dollars conveying its persistently deceptive message to consumers across the United States.

64.     Dial has orchestrated its deceptive Dial Complete advertising campaign by using a variety of media, including television, newspapers, radio, media tours, the Internet, email blasts, video news releases, point-of-sale displays, and on the product's packaging.  As a result of its pervasive and uniform advertising campaign, Dial has elevated Dial Complete to become one of the top sellers in the antibacterial product category.

65.     Through its marketing and advertising campaign for Dial Complete, Dial sends an unmistakably clear, but an unconscionably deceptive and unfair, message:  Dial Complete is more effective at killing germs, protecting consumers from germs, and, thus, preventing illness and promoting good health, than washing with less expensive plain soap and water or other liquid hand soaps.

66.     As a result of Dial's deceptive and misleading messages and omissions about Dial Complete, conveyed directly through its marketing and advertising campaigns, Dial has been able to charge a significant price premium for Dial Complete over traditional hand soaps, which it has convinced consumers to pay for a purportedly superior product, as its advertising misleadingly conveys.

67.     Dial's false and misleading representations and omissions regarding Dial Complete have been – and continue to be – material to consumers, including Plaintiffs and the other members of the Classes, and Dial knows that its misleading representations are material in nature.

### The False, Misleading, and Deceptive Claims

68.     Although liquid soaps have been on the market for years, according to Herbert Baum, Dial's Chairman, Dial Complete "is the greatest advancement in liquid soap since the production of Liquid Dial in 1988." http://www.happi.com/articles/2001/12/a-new-attitude-soaps-get-serious

69.     Dial's claims about Dial Complete's effectiveness and superiority are false, deceptive, unfair, and unconscionable because there is not sufficient, competent and/or reliable scientific evidence and/or substantiation for Dial Complete's effectiveness and superiority claims when the Product is used by the consuming public in real-world settings.

70.     Dial's advertising message also ignores the well-supported fact that washing with soap and water is just as effective as washing with Dial Complete.  Dial Complete contains triclosan and is more expensive than soap that does not contain triclosan.

71.     Dial, however, has no competent, credible, and reliable scientific evidence that is sufficient in quality and quantity, based on standards generally accepted in the relevant scientific

fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate the claims that Dial Complete is over 1,000 times more effective at killing disease-causing germs that other antibacterial liquid hand soaps, killing 99.99% of bacteria, kills 99.9% of illness-causing bacteria, reducing disease transmission by 50% compared to washing with a plain soap, and killing more germs than any other liquid hand soap.

72. Dial's purported scientific evidence is neither competent nor reliable. Dial does not possess any tests, analyses, research, or studies that have been conducted and evaluated in an objective manner. To the contrary, Dial's claims appear to be based only on a single, in-house study, conducted at Dial's own "Dial Center for Innovation," which serves as Dial's Research & Development Department.

73. Moreover, Dial conducted this study in 2006; Dial Complete was introduced to the public in 2001, five years before the study was released. During this time, however, Dial advertised and marketed Dial Complete as indicated above.

74. Dial's advertisements and packaging for Dial Complete omit, fail to disclose and conceal the specific limitations of this "study" including: (a) that only two different types of bacteria were tested (although Dial's website claims to work on at least four different types); (b) there was no determination as to the development of immunity by the bacteria after repeated use; (c) that only seven to thirteen subjects participated in the study; (d) the study only compared Dial Complete with "Kiss My Face Self Foaming Liquid Soap," without disclosing why that particular soap was chosen; (e) the study did not compare Dial Complete with any other antibacterial soap; (f) the study did not determine that any decrease in pathogens transmitted to food necessarily translates into reducing the rate or severity of specific infections; (g) the study

failed to disclose how long the subjects washed with the soap and how many times they did so; and (g) the study called for additional testing.

75.     Given the limitations of Dial's "study," it is unfair and deceptive for Dial to represent that whatever results were achieved in the laboratory setting, would translate into benefits for consumers from use of Dial Complete in real world settings.

76.     Moreover, Dial's study, which was performed by Dial itself, or by a related entity, is far from objective.

77.     In fact, the competent and reliable scientific evidence on this topic indicates that Dial's claims concerning the Product are false, deceptive, unfair, and unconscionable.

78.     Dial's advertising and messaging fails to advise and/or warn consumers – including Plaintiffs and the other members of the Classes – that using products containing triclosan might provide a suitable environment for emergence of antimicrobial drug-resistant species in the community setting or lead to the development of bacteria resistant to triclosan.

79.     The Journal of the Annual Meeting of the American Medical Association in 2000 concluded that "the use of common antimicrobials [*i.e.* triclosan] for which acquired resistance has been demonstrated in bacteria as ingredients in consumer products should be discontinued, unless data emerge to conclusively show that such resistance has no impact on public health and that such products are effective at preventing infection."

80.     In March 2004, a study published in the American Journal of Infection Control concluded that, after testing the efficacy of fourteen different hand hygiene agents including a hand wash with 1% triclosan, washing with plain soap and water was more effective than triclosan after one wash.   Sicket-Bennett, Weber, Gergen-Teague, Sobsey, Samsa, Rutala. *American Journal of Infection Control,* pp. 67-77.

81.     Several studies have been published regarding hand cultures in houses using liquid hand soap containing 1.2% triclosan to observe the presence of bacteria.  These studies found that little evidence supported the notion that triclosan soap affords any benefit in the reduction of infectious symptoms, bacterial counts, or types of bacteria on the hands of individuals within the household setting in the developed world. *See* Allison E. Aiello et al., *Relationship between Triclosan and Susceptibilities of Bacteria Isolated from Hands in the Community*, 48 Antimicrob. Agents & Chemother. 2973 (Aug. 2004), available at http://aac.asm.org/content/48/8/2973.full.; Allison E. Aiello et al., *Consumer antibacterial soaps: Effective or just risky?*, Clinical Infectious Diseases. 45 Suppl 2:S137-47 (2007); and Elaine L. Larson et al., *Effect of Antibacterial Home Cleaning and Handwashing Products on Infectious Disease Symptoms*, Annals of Internal Medicine, Vol. 140, No. 5 (March 2004).

82.     On March 20, 2001, Dial received Patent No. US 2,204, 430:  *An antibacterial composition that has a 99% reduction in Gram positive and Gram negative bacteria.*  According to the patent application the composition including triclosan was tested against only four bacteria, nowhere near 99% of the bacteria that is known to exist and cause disease in human populations.

83.     Contrary to Dial's position, scientists from the University of Michigan, Columbia University, and Tufts University conducted a review of 27 studies conducted over the past 30 years and determined that soaps containing added ingredients such as triclosan in liquid soap and Triclocarban in bar soap do not show a benefit above and beyond soap that does not contain those ingredients in the real world environment.  These findings were published in the academic journal *Clinical Infectious Diseases.*

84.     The independent scientists who conducted those studies concluded that:  "[t]he lack of an additional health benefit associated with the use of triclosan-containing consumer soaps over regular soap, coupled with laboratory data demonstrating a potential risk of selecting for drug resistance, warrants further evaluation by governmental regulators regarding antibacterial product claims and advertising.  Further studies of this issue are encouraged." Allison Aiello, *Consumer Antibacterial Soaps: Effective or Just Risky?* Clinical Infectious Diseases 2007; 45; S137-47).

85.     The U.S. Food & Drug Administration (FDA) concurs with these results.  In 2005, the FDA also concluded that antimicrobial soaps do not reduce the risk of illness and infection in the home, yet products made with triclosan not only remain on the market, but are aggressively marketed by companies, including Dial.

86.     Correspondingly, the Canadian Paediatric Society, the American Medical Association, and other groups have concluded and publicly stated that antibacterial soaps and washes are no more effective than regular soap and water in fighting infection in everyday use. *See Antimicrobial products in the home: The evolving problem of antibiotic resistance***,** Canadian Paediatric Society (CPS), 11(3) *Paediatrics & Child Health* 169 (2006), available at http://www.cps.ca/english/statements/ID/ID06-02.htm#Reallife; Tan Litjen et al., *Use of Antimicrobial Agents in Consumer Products*, J.A.M.A. 138(8) *Arch Dermatol.* 1082 (2008).

87.     In an April 8, 2010 "Consumer Update," the FDA definitively stated that: "[a]t this time, FDA does not have evidence that triclosan added to antibacterial soaps and body washes       provides       extra       health       benefits       over       soap       and       water." http://www.fda.gov/forconsumers/consumerupdates/ucm205999.htm

88.     In the same update, the FDA expressed concerns that triclosan may alter hormone regulation, or could create antibiotic-resistant bacteria.  *Id*.

89.     Although Dial was, and is, aware of this lack of substantiation as well as the questions as to the safety and efficacy of Dial Complete, Dial, nevertheless, has, and continues to make false and misleading representations to consumers – including Plaintiffs and the other members of the Classes – about the Product.

90.     Absent such substantiation, Dial's claims regarding the Product are deceptive and misleading.  Had Plaintiffs and the other members of the Classes been aware of the truth about Dial Complete, they would not have purchased Dial Complete at a premium, but, instead, would have paid substantially less for the Product, not purchased the Product at all, or purchased ordinary, less expensive, soaps that did not contain triclosan.

91.     At all times relevant to this action, Plaintiffs and the other members of the Classes, heard, saw, and relied upon various Dial Product claims, promotions, commercials, and advertisements for Dial Complete in making the decision to purchase the Product.

92.     In reliance on the false, unfair, deceptive and/or unconscionable and unfair promotional, package and advertising claims and omissions, Plaintiffs and each of the other members of the Classes purchased Dial Complete.  Unbeknownst to Plaintiffs and the other members of the Classes at the time of purchase, however, there was and still is no reasonable basis in fact or substantiation for Dial's claims that Dial Complete "kills 99.99% of germs, is the "#1 Doctor Recommended" liquid hand wash, "kills more germs than other liquid hand soap is "over 1,000 times more effective at killing disease-causing germs than any other antibacterial liquid hand soaps," and is "over 10 times more effective at killing disease-causing germs than ordinary liquid soap."

93.     Dial's false statements of product quality and effectiveness concerning Dial Complete would cause a reasonable person to believe such statements, and did, in fact, cause the Plaintiffs and the other members of the Classes to believe and rely upon such statements in making their decisions to buy Dial Complete.

94.     Despite the reasonable expectations of consumers created by its marketing, advertising, and sale of Dial Complete, Dial has engaged in – and continues to engage in – the following routine, albeit wrongful, course of conduct, wherein Dial:

     a.     Represents expressly or by implication that the Product is effective, when it knows that those representations are false;

     b.     Fails to disclose to consumers the reasonably foreseeable risks of using Dial Complete and the material defects in the Product;

     c.     Fails to disclose the nature of the defects to consumers;

     d.     Improperly represents and claims in its advertisements to possess and rely upon clinical and/or scientific data to support its claims that Dial Complete is as effective and superior in quality as Dial represents, and Dial cannot and has not substantiated its representations, advertising claims, or assertions it has made – and continues to make – on the Product Packaging in connection with its marketing, advertising, promotion, and sale of Dial Complete;

     e.     Fails to take action to correct its omissions or false or misleading implied or express representations about the use, efficacy, qualities, and benefits of its Products; and

     f.     Falsely represents and claims in its advertisements to possess and rely upon clinical and/or scientific data, despite the overwhelming evidence that negates Dial's claims regarding Dial Complete.

95.     By engaging in the foregoing course of conduct, Dial has caused consumers – including Plaintiffs and the other members of the Classes – to be aggrieved and suffer ascertainable losses, in that, among other things, Dial's course of conduct systematically:

     a.     Caused Plaintiffs and the other members of the Classes to pay a premium for a Product that did not work as promised; and

b.      Caused reasonable consumers like Plaintiffs and the other members of the Classes to spend money for a product that they would not have spent but-for Dial's common course of conduct.

96.      To this day, Dial continues to conceal material information from consumers of its Dial Complete products – including Plaintiffs and the other members of the Classes – that: (a) Dial Complete has no greater efficacy than soaps that do not contain triclosan; and (b) there is no clinical support for Dial's advertising and packaging claims concerning the Product.

## V.   CLASS ACTION ALLEGATIONS

97.      Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following classes (the "Classes"),[3] comprised of consumers in the states of Arkansas, California, Florida, Illinois, Louisiana, Missouri, New Hampshire, New York, and Ohio, and Wisconsin, categorized by substantial similarities in substantive state law and defined as:

### The Consumer Protection States Class

All persons who reside in the Consumer Protection States[4] and who have purchased Dial Complete from the date of its commercial launch in March 2001 through the final disposition of this and any and all related actions (the "Consumer Protection Class").

---

[3] Plaintiffs reserve the right to amend all Class definitions at class certification based on additional research and/or changes in state law.

[4] The Consumer Protection States are defined hereinafter to include the states of Arkansas, California, Florida, Illinois, Missouri, New Hampshire, New York, and Ohio, and Wisconsin. Thus, the Consumer Protection States include the states of residence of all Plaintiffs individually named in this action except for those Plaintiffs residing in the state of Louisiana.  These individually named Plaintiffs are referred to hereinafter as the "Consumer Protection Plaintiffs."

### The Breach of Express Warranty States Class

All persons who reside in the Non-Privity Breach of Express Warranty States[5] and who have purchased Dial Complete from the date of its commercial launch in March 2001 through the final disposition of this and any and all related actions (the "Breach of Express Warranty Class").

### The Breach of Implied Warranty States Class

All persons who reside in the Non-Privity Breach of Implied Warranty States[6] and who have purchased Dial Complete from the date of its commercial launch in March 2001 through the final disposition of this and any and all related actions (the "Breach of Implied Warranty Class").

### The Unjust Enrichment States Class

All persons who reside in the Unjust Enrichment States[7] and who have purchased Dial Complete from the date of its commercial launch in March 2001 through the final disposition of this and any and all related actions (the "Unjust Enrichment Class").

---

[5] The Non-Privity Breach of Express Warranty States are defined hereinafter to include the states of Arkansas, California, Florida, Illinois, Louisiana, Missouri, New Hampshire, New York, and Ohio. Thus, the Non-Privity Breach of Express Warranty States include the states of residence of all Plaintiffs individually named in this action except for those Plaintiffs residing in the state of Wisconsin. These individually named Plaintiffs are referred to hereinafter as the "Breach of Express Warranty Plaintiffs."

[6] The Non-Privity Breach of Implied Warranty States are defined hereinafter to include the states of Arkansas, California, Florida, Louisiana, Missouri, New Hampshire, and Ohio. Thus, the Consumer Protection States include the states of residence of all Plaintiffs individually named in this action except for those Plaintiffs residing in the states of Illinois, New York, and Wisconsin. These individually named Plaintiffs are referred to hereinafter as the "Breach of Implied Warranty Plaintiffs."

[7] The Unjust Enrichment States are defined hereinafter to include the states of Arkansas, California, Florida, Illinois, Louisiana, Missouri, New Hampshire, New York, Ohio, and Wisconsin. Thus, the Unjust Enrichment States include the states of residence of all Plaintiffs individually named in this action. These individually named Plaintiffs are referred to hereinafter as the "Unjust Enrichment Plaintiffs."

## The Injunctive Relief States Class

All persons who reside in the Injunctive Relief States[8] and who have purchased Dial Complete from the date of its commercial launch in March 2001 through the final disposition of this and any and all related actions (the "Injunctive Relief Class").

98.    The Consumer Protection States Class, the Breach of Express Warranty States Class, the Breach of Implied Warranty States Class, the Unjust Enrichment States Class, and the Injunctive Relief States are collectively referred to herein as the "Classes," unless otherwise identified.

99.    Excluded from each of the Classes are Dial and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; the judges to whom this case is assigned and any immediate family members thereof; anyone who purchased Dial Complete for the purpose of resale; and anyone asserting claims for personal injury.

100.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

101.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of each of the Classes are so numerous that individual joinder of all members of each of the proposed Classes is impracticable.  There are hundreds of thousands, if not millions, of individual purchasers of Dial Complete products.  The precise number of the members of these Classes and their addresses are unknown to Plaintiffs, but may be ascertained from Dial's books and records.

---

[8]  The Injunctive Relief States are defined hereinafter to include the states of Arkansas, California, Florida, Illinois, Louisiana, Missouri, New Hampshire, New York, Ohio, and Wisconsin.  Thus, the Injunctive Relief States include the states of residence of all Plaintiffs individually named in this action.  These individually named Plaintiffs are referred to hereinafter as the "Injunctive Relief Plaintiffs."

Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

102.   **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law or fact, which predominate over any questions affecting individual members of the Classes.  All members of the Classes were exposed to Dial's deceptive and misleading advertising and marketing claims concerning its Dial Complete products.  Furthermore, common questions of law or fact include:

        a.     whether Dial engaged in the conduct alleged herein;

        b.     whether Dial's practices violate applicable law;

        c.     whether Plaintiffs and the other members of the Classes are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

        d.     whether Plaintiffs and the other members of the Classes are entitled to equitable relief, including but not limited to injunctive relief and restitution.

103.   Dial engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

104.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all members of the Classes were comparably injured through the substantially uniform misconduct described above, were subject to Dial's false, deceptive, misleading, and unfair advertising and marketing practices concerning its Dial Complete products.  Plaintiffs herein are advancing the

same claims and legal theories on behalf of themselves and all members of the Classes and there are no defenses available to Dial that are unique to the Plaintiffs.

105.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the proposed Classes because their interests do not conflict with the interests of the other members of the Classes they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs will prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

106.   **Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**  Dial has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief, as described below, with respect to the members of the Classes as a whole.  Specifically, injunctive relief is necessary and appropriate to require Dial to, among other things:  (a) discontinue advertising, marketing, packaging and otherwise representing its Dial Complete product as being superior to conventional soap products; (b) undertake an immediate public information campaign to inform members of the proposed Classes of the truth about Dial's products and Dial's prior practices relating thereto; and (c) to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of Dial Complete, including, without limitation, the placement of corrective advertising and providing written notice to the public.

107.   **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the

Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Dial, so it would be impracticable for members of the Classes to individually seek redress for Dial's wrongful conduct.  Even if the members of the Classes could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Given the similar nature of the members of the Classes' claims and the absence of material differences in the statutes and common laws upon which the members of the Classes' claims are based when such claims are grouped as proposed above and below, the Classes will be easily managed by the Court and the parties.

## VI.   DIAL IS ESTOPPED FROM ASSERTING STATUTE OF LIMITATIONS-BASED DEFENSES

108.    Dial knew or reasonably should have known that Dial Complete was no more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiffs and the general public, while continually marketing Dial Complete as a superior product.  Dial's acts of fraudulent concealment include failing to disclose that Dial Complete is no more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan..

109.    Plaintiffs had no reasonable way to discover or detect Dial's misrepresentations and omissions about the efficacy of Dial Complete until shortly before Plaintiffs filed their respective Complaints.

110.    Dial had a duty to disclose that Dial Complete is no more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan.

## VII.   CLAIMS FOR RELIEF

### COUNT I
**Violation of State Consumer Protection Laws**
**(Brought on Behalf of the Consumer Protection States Class)**

111.    Plaintiffs Marvin Catalan, Alicia Gentile, Eric Terrell, Amani El Jandali, Sonia Herrera, Sven Vogtland, Jonathon Cessna, David Walls, Kristina Pearson, Michelle Carter, Kami Raleigh, Michael Feuer, Jenny Marrazzi, and Megan Peterson (the "Consumer Protection Plaintiffs" for purposes of this Count I), incorporate by reference Paragraphs 1-110 of this Consolidated Complaint as though fully stated herein.

112.    The Consumer Protection Plaintiffs bring this claim individually and on behalf of the other members of the Consumer Protection States Class.  Each of the Consumer Protection Plaintiffs brings this claim on their own behalf under the law of the state in which they reside and purchased Dial Complete products and on behalf of each of the other members of the Consumer Protection States Class residing in and having purchased Dial Complete products in the same state as they do.

113.    Each of the Consumer Protection Plaintiffs and each of the other members of the Consumer Protection States Class is a consumer, purchaser, or other person entitled to the protection of the consumer protection laws of the state in which they reside and purchased Dial Complete products.

114.    The consumer protection laws of the state in which each of the Consumer Protection Plaintiffs and each of the other members of the Consumer Protection States Class

30

resides and purchased Dial Complete products declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

115.    All of the Consumer Protection States have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising that further allow consumers to bring private and/or class actions.   These statutes are found at:

      a.      Arkansas Deceptive Trade Practices Act as codified beginning at A.C.A §4-88 101 *et seq.*;

      b.      California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.;*

      c.      False Advertising Law, California Business and Professions Code § 17500, *et seq.*;

      d.      California Business & Professions Code §17200, *et seq.;*

      e.      The Florida Deceptive and Unfair Trade Practices Act, *Fla. Stat.* § 501.204(1), *et seq.*;

      f.      Florida Statutes Section 817.41, *et seq.*;

      g.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*;

      h.      Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020*, et seq.*;

      i.      New Hampshire Regulation of Business Practices for Consumer Protection, N.H.R.S.A. 358A:1, *et seq.*;

      j.      New York General Business Law §349, *et seq.*;

      k.      New York General Business Law §350, *et seq.*;

      l.      Ohio's Consumer Sales Practices Act, Ohio Revised Code § 1345.01, *et seq.* ;

      m.      Ohio's Deceptive Trade Practices Act §4165.02, *et seq.*; and

n.      Violations of the Wisconsin Stat. §100.18, *et seq.*

116.   To the extent required, the Consumer Protection Plaintiffs have provided Dial notice under each of the above listed statutes.

117.   In the conduct of trade or commerce regarding the marketing and sale of Dial Complete, Dial engaged in the unfair and deceptive acts or practices described above and incorporated herein.

118.   Dial's representations and advertisements of its Dial Complete products are deceptive and likely to deceive consumers, including the Consumer Protection Plaintiffs and the other members of the Consumer Protection States Class.

119.   Dial knew or should have known that its representations and advertisements of its Dial Complete products, as described above, were untrue or misleading.

120.   Dial used or employed such deceptive and unlawful acts or practices with the intent that the Consumer Protection Plaintiffs and other members of the Consumer Protection States Class rely thereon or otherwise be deceived.

121.   The Consumer Protection Plaintiffs and the other members of the Consumer Protection States Class relied on Dial's misrepresentation and/or omissions and were deceived thereby.

122.   The Consumer Protection Plaintiffs and the other members of the Consumer Protection States Class would not have purchased Dial's Products at the prices they paid, or would not have purchased such products at all, had they known the truth and are thus entitled to a full or partial refund as allowed under each of the several state laws alleged herein.

123.   Further, as a result of Dial's misrepresentations, as alleged herein, the Consumer Protection Plaintiffs and other members of the Consumer Protection States Class did not receive

the benefit of their bargain in purchasing Dial Complete products.  As a result of Dial's conduct, the Consumer Protection Plaintiffs and other members of the Consumer Protection States Class were damaged in an amount to be proven at trial.

124.    The Consumer Protection Plaintiffs and other members of the Consumer Protection States Class are entitled to actual compensatory and/or statutory damages, as well as attorneys' fees and costs of suit, to the fullest extent permitted pursuant to the various state laws implicated by this Claim.

**COUNT II**
**Breach of Express Warranty**
**(Brought on Behalf of the Breach of Express Warranty States Class)**

125.    Plaintiffs Marvin Catalan, Alicia Gentile, Eric Terrell, Amani El Jandali, Sonia Herrera, Sven Vogtland, Jonathon Cessna, David Walls, Kristina Pearson, Eric Capdeville, Bridget Becnel Delivorias, Karen Finney, Michelle Carter, Kami Raleigh, Michael Feuer, and Jenny Marrazzi (the "Breach of Express Warranty Plaintiffs" for purposes of this Count II), incorporate by reference Paragraphs 1-110 of this Consolidated Complaint as though fully stated herein.

126.    The Breach of Express Warranty Plaintiffs bring this claim individually and on behalf of the other members of the Breach of Express Warranty States Class.

127.    The Breach of Express Warranty Plaintiffs, and each of the other members of the Breach of Express Warranty States Class, formed a contract with Dial at the time they purchased Dial Complete products.  The terms of that contract include the promises and affirmations of fact Dial makes on Dial Complete's packaging and through marketing and advertising, including Dial's promise that Dial Complete products are more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan, as more fully described above.

This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between each of the Breach of Express Warranty Plaintiffs and each of the other members of the Breach of Express Warranty States Class, and Dial.

128.   In addition or in the alternative, Dial made each of its above-described representations to induce the Breach of Express Warranty Plaintiffs and each of the other members of the Breach of Express Warranty States Class, to rely on such representations concerning the purported benefits and efficacy of its Dial Complete products as a material factor in their decision(s) to purchase those Dial Complete products.

129.   All conditions precedent to Dial's liability under this contract have been performed by between the Breach of Express Warranty Plaintiffs and each of the other members of the Breach of Express Warranty States Class, when they purchased the Dial Complete products. At all times relevant to this action, Dial has breached its express warranties about its Dial Complete products because Dial Complete products are not more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan., in violation of state express warranty laws, including:

> a.   Ark. Code Ann. §4-2-313 ;
>
> b.   Cal. Comm. Code §2313 ;
>
> c.   Fla. Stat. Ann. §672.313;
>
> d.   810 Ill. Comp. Stat. 5/2-313;
>
> e.   La. R.S. 9:2800.51, *et seq.*;
>
> f.   Mo. Rev. Stat. §400.2-313;
>
> g.   N.Y. UCC §2-313

        h.      N.H. Rev. Stat. Ann. §382-A:2-313; and

        i.       Ohio. Rev. Code Ann. §1302.26.

130.    The above states do not require privity of contract to recover for breach of express warranty.

131.    As a result of Dial's breaches of its express warranty, the Breach of Express Warranty Plaintiffs, and each of the other members of the Breach of Express Warranty States Class, were damaged in the amount of the purchase price they paid for Dial Complete products, in an aggregate amount to be proven at trial.

132.    The Breach of Express Warranty Plaintiffs, on behalf of themselves and the other members of the Breach of Express Warranty States Class, demand judgment against Dial for compensatory damages for themselves and each of the other Class members, as well as attorneys' fees, interest, and costs.

133.    Within a reasonable time after they knew or should have known of such breach, the Breach of Express Warranty Plaintiffs, on behalf of themselves and the other members of the Breach of Express Warranty States Class, placed Dial on notice thereof.

**<u>COUNT III</u>**
**Breach of Implied Warranty**
**(Brought on Behalf of the Breach of Implied Warranty States Class)**

134.    Plaintiffs Marvin Catalan, Alicia Gentile, Eric Terrell, Amani El Jandali, Sonia Herrera, Sven Vogtland, Jonathon Cessna, Eric Capdeville, Bridget Becnel Delivorias, Karen Finney, Michelle Carter, Kami Raleigh, and Jenny Marazzi (the "Breach of Implied Warranty Plaintiffs" for purposes of this Count III), incorporate by reference Paragraphs 1-110 of this Consolidated Complaint as though fully stated herein.

35

135.    The Breach of Implied Warranty Plaintiffs bring this claim individually and on behalf of the other members of the Breach of Implied Warranty States Class.

136.    The Breach of Implied Warranty Plaintiffs and the other members of the Breach of Implied Warranty States Class purchased Dial Complete products on the basis that the Product was of merchantable quality and fit for the use for which it was intended.

137.    By representing that Dial Complete was more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan in its marketing and advertising, as described herein, Dial impliedly warranted that that the Product was of merchantable quality and fit for the use for which it was intended.

138.    Dial breached the warranty implied at the time of sale in that the Breach of Implied Warranty Plaintiffs and the other members of the Breach of Implied Warranty State Class did not receive goods that were more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan as represented and thus, the goods were unfit for their intended use and not of merchantable quality as promoted, marketed, advertised, packaged, or sold.

139.    At all times relevant to this action, Dial has breached its implied warranties concerning its Dial Complete products because Dial Complete is not more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan, in violation of state implied warranty laws, including:

      a.      Ark. Code Ann. §4-2-314 ;

      b.      Cal. Comm. Code §2314 ;

      c.      Fla. Stat. Ann. §672.314;

      d.      La. Civ. Code art. 2475, 2520;

      e.      Mo. Rev. Stat. §400.2-314;

f.      N.H. Rev. Stat. Ann. §382-A:2-314; and

g.      Ohio. Rev. Code Ann. §1302.27.

140.    The above states do not require privity of contract to recover for breach of implied warranty.

141.    As a result of Dial's breach of its implied warranties, the Breach of Implied Warranty Plaintiffs and the other members of the Breach of Implied Warranty States Class have been damaged in the amount of the price they paid for Dial Complete products in an amount to be proven at trial.

142.    Plaintiffs, individually and on behalf of the other members of the Breach of Implied Warranty States Class demand judgment against Dial for compensatory damages for themselves and each of the other members of the Breach of Implied Warranty States Class, plus attorneys' fees, interest, and costs.

143.    Within a reasonable time after they knew or should have known of such breach, the Breach of Implied Warranty Plaintiffs, on behalf of themselves and the other members of the Breach of Implied Warranty States Class, placed Dial on notice thereof.

### COUNT IV
### Unjust Enrichment
### (Brought on Behalf of the Unjust Enrichment States Class)

144.    Plaintiffs Marvin Catalan, Alicia Gentile, Eric Terrell, Amani El Jandali, Sonia Herrera, Sven Vogtland, Jonathon Cessna, David Walls, Kristina Pearson, Eric Capdeville, Bridget Becnel Delivorias, Karen Finney, Michelle Carter, Kami Raleigh, Michael Feuer, Jenny Marrazzi, and Megan Peterson (the "Unjust Enrichment Plaintiffs" for purposes of this Count IV), incorporate by reference Paragraphs 1-110 of this Consolidated Complaint as though fully stated herein.

145.     The Unjust Enrichment Plaintiffs bring this claim individually and on behalf of the other members of the Unjust Enrichment States Class.

146.     Plaintiffs conferred a tangible economic benefit upon Defendants by purchasing Dial Complete products. Plaintiffs would have expected remuneration from Defendants at the time this benefit was conferred had they known that the Product did not perform as promised and has been widely criticized by government officials and scientists.

147.     As a result of Dial's deceptive, fraudulent, and misleading packaging, advertising, marketing, and sales of its Dial Complete products, Dial was enriched, at the expense of the each of the Unjust Enrichment Plaintiffs and the other members of the Unjust Enrichment States Class, though the payment of the purchase price for Dial's Dial Complete products.

148.     Under the circumstances, it would be against equity and good conscious to permit Dial to retain the ill-gotten benefits that it received from the Unjust Enrichment Plaintiffs and the other members of the Unjust Enrichment States Class in light of the fact that the Dial Complete products purchased by the Unjust Enrichment Plaintiffs and the other members of the Unjust Enrichment States Class were not as Dial purports them to be, as set forth more fully above.

149.     It would thus be unjust or inequitable for Dial to retain the benefit without restitution or disgorgement of monies paid to Dial for Dial Complete products, or such other appropriate equitable remedy as appropriate, to the Unjust Enrichment Plaintiffs and the other members of the Unjust Enrichment States Class.

### COUNT V
### Injunctive Relief
### (Brought on Behalf of the Injunctive Relief States Class)

150.     Plaintiffs Marvin Catalan, Alicia Gentile, Eric Terrell, Amani El Jandali, Sonia Herrera, Sven Vogtland, Jonathon Cessna, David Walls, Kristina Pearson, Eric Capdeville,

Bridget Becnel Delivorias, Karen Finney, Michelle Carter, Kami Raleigh, Michael Feuer, Jenny Marrazzi, and Megan Peterson (the "Injunctive Relief Plaintiffs" for purposes of this Count V), incorporate by reference Paragraphs 1-110 of this Consolidated Complaint as though fully stated herein.

151.    Dial has acted or refused to act on grounds generally applicable to the Injunctive Relief Plaintiffs and the other members of the Injunctive Relief States Class, thereby making final injunctive relief appropriate.

152.    Dial's conduct, as more fully set forth herein, both in the past and through the present day, has demonstrated a willful disregard for proven scientific facts in a clear attempt to sell a product that is no more effective than other, less expensive products which do not contain triclosan.

153.    Dial persists in its deceptive and unfair marketing and sales practices concerning the Product to the detriment of consumers across the country, including the Injunctive Relief Plaintiffs and the other members of the Injunctive Relief States Class.

154.    If Dial is allowed to continue with these practices, consumers – the Injunctive Relief Plaintiffs and the other members of the Injunctive Relief States Class –  will be irreparably harmed in that they do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Consolidated Amended Complaint, unless injunctive relief is granted to stop Dial's improper conduct concerning its marketing and sale of the Product.

155.    The Injunctive Relief Plaintiffs and the other members of the Injunctive Relief States Class, are, therefore, entitled to an injunction requiring Dial remedy its unfair and deceptive practices relating to the marketing sale of the Product, as alleged herein, including the effects thereof.

156.   The Injunctive Relief Plaintiffs seek a Court Order requiring Dial to do the following:

(a)  discontinue advertising, marketing, packaging and otherwise representing its Dial Complete product as being superior to conventional soap products;

(b)   undertake an immediate public information campaign to inform   the Injunctive Relief Plaintiffs and the other members of the Injunctive Relief States Class, of the truth about Dial's products and Dial's prior practices relating thereto; and

(c)  correct any erroneous impression the Injunctive Relief Plaintiffs and the other members of the Injunctive Relief States Class, may have derived concerning the nature, characteristics, or qualities of Dial Complete, including, without limitation, the placement of corrective advertising and providing written notice to the general public.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf other members of the Classes described in this Consolidated Complaint, respectfully request that:

A.   the Court certify the Classes pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), and adjudge Plaintiffs and their counsel to be adequate representatives thereof;

B.   the Court enter an Order requiring Dial to pay Plaintiffs' and the other members of the Classes' economic, monetary, actual damages (including multiple damages), consequential, compensatory, or statutory damages, whichever is greater; and, awarding Plaintiffs and the other members of the Classes exemplary damages, to the extent permitted under the laws of each of the states implicated in this action;

C.   the Court enter an Order awarding restitution and disgorgement of Dial's revenues arising from its conduct alleged above, or any other appropriate remedy in equity, to Plaintiffs and the other members of the Classes;

D.   the Court enter an Order awarding injunctive relief as permitted by law or equity, including: enjoining Dial from continuing the unlawful practices set forth above; directing Dial

to cease its deceptive and misleading marketing campaign concerning its Dial Complete products, and to disgorge all monies Dial acquired by means of any act or practice declared by this Court to be wrongful;

   E.  the Court enter an Order awarding Plaintiffs, individually and on behalf of the other members of the Classes, their expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

   F.  the Court enter an Order awarding to Plaintiffs individually and on behalf of the other members of the Classes, pre- and post-judgment interest, to the extent allowable; and

   G.  for such other and further relief as may be just and proper.

## IX.  <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Consolidated Complaint so triable.

Dated:  January 23, 2012

Respectfully submitted,


/s/ Lucy J. Karl
Lucy J. Karl
NH Bar No. 5547
**SHAHEEN & GORDON, P.A.**
107 Storrs Street
Concord, New Hampshire  03302
Telephone: (603) 225-7276
Facsimile: (603) 225-5112
lkarl@shaheengordon.com

*Plaintiffs' Interim Lead Counsel*

*Plaintiffs' Executive Subcommittee*

Richard J. Arsenault
**NEBLETT, BEARD &
ARSENAULT**
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana  71309
Telephone: (216) 621-8484
Facsimile: (216)771-1632
rarsenault@nbalawfirm.com

Adam J. Levitt
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Telephone: (312) 984-0000
Facsimile: (312) 984-0001
levitt@whafh.com

John R. Climaco
**CLIMACO, WILCOX, PECA,
  TARANTINO & GAROFOLI CO.,
L.P.A.**
55 Public Square, Suite 1950
Cleveland, Ohio  44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com

Charles E. Schaffer
**LEVIN,  FISHBEIN,  SEDRAN  &
BERMAN**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania  19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

Eric D. Holland
**HOLLAND GROVES SCHNELLER
  & STOLZE, LLC**
300 North Tucker Boulevard, Suite 801
St. Louis, Missouri  63101
Telephone: (314) 241-8111
Facsimile: (314) 241-5554
eholland@allfela.com

42

*Plaintiffs' Steering Committee*

Daniel E. Becnel, Jr.
**BECNEL LAW FIRM, LLC**
P.O. Drawer H
106 West Seventh Street
Reserve, Louisiana  70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445
dbecnel@becnellaw.com

Christopher M. Ellis
**BOLEN ROBINSON & ELLIS, LLP**
202 South Franklin, 2nd Floor
Decatur, Illinois  62523
Telephone: (217) 429-4296
Facsimile: (217) 329-0034
cellis@brelaw.com

Jordan L. Chaikin
**PARKER & WAICHMAN LLP**
3301 Bonita Beach Road, Suite 101
Bonita Springs, Florida  34134
Telephone: (239) 390-1000
Facsimile: (239) 390-0055
jchaikin@yourlawyer.com

David C. Rash
**ALTERS LAW FIRM, P.A.**
4141 Northeast 2nd Avenue
Miami, Florida  33137
Telephone: (305) 571-8550
Facsimile: (305) 571-8558
david@alterslaw.com

James C. Shah
**SHEPHERD, FINKELMAN,
MILLER & SHAH, LLC**
35 East State Street
Media, Pennsylvania  19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshah@sfmslaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on January 23, 2012, she caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated:  January 23, 2012


By:    <u>/s/ Lucy J. Karl</u>
Lucy J. Karl
