UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| IN RE DIAL COMPLETE MARKETING AND SALES PRACTICES LITIGATION | CASE NO.  11-md-2263-SM (MDL DOCKET NO. 2263) (ALL CASES) |
| --- | --- |

## SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

**Dated:**  December 26, 2018

This Second Amended Consolidated Class Action Complaint (the "Consolidated Complaint"), is brought by individual consumers on behalf of themselves and on behalf of a nationwide Class of similarly-situated consumers, alleging claims against Defendant, The Dial Corporation ("Dial" or "Defendant"), under consumer protection and unfair and deceptive trade practices statutes, as well as common law warranty and unjust enrichment claims.   The allegations in this Consolidated Complaint are based upon the personal knowledge of each of the Plaintiffs named herein (collectively, "Plaintiffs") as to themselves and their own actions, and upon information and belief as to all other matters.

## I.   NATURE OF THE ACTION

1.     This action alleges that Dial deceptively and misleadingly marketed its Dial Complete branded soaps, including but not limited to Dial Complete Foaming Antibacterial Hand Wash (all such Dial Complete branded products are collectively referred to herein as "Dial Complete" or the "Product") in a uniform manner, to Plaintiffs and the other members of the proposed Class.

2.     Through its extensive and comprehensive nationwide marketing campaign, Dial intended to, and did, represent to consumers that washing their hands with Dial Complete—which contained the active ingredient triclosan—was more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan.

3.     Dial also deceptively and unfairly represented that using Dial Complete provided special health benefits, including, but not limited to, being over 1,000 times more effective at killing disease-causing germs than other antibacterial liquid hand soaps, killing 99.99% of bacteria, killing 99.9% of illness-causing bacteria, reducing disease transmission by 50% compared to washing with a plain soap, and killing more germs than any other liquid hand soap.

4.     Dial's omissions and representations about the greater effectiveness and special health benefits of Dial Complete, however, were deceptive and misleading and, prior to commencing this lawsuit, Dial had taken no meaningful steps to correct consumer misconceptions regarding the Product.

5.     Indeed, there is and has been no competent or reliable evidence that demonstrates that Dial Complete provided any of the results Dial promised and represented when used in community or "real world" settings in which the amount of soap used and amount of time used for washing are not strictly controlled.  Furthermore, there have been several studies confirming that use of triclosan-containing hand soaps in the home may actually have a negative effect. Dial thus has no substantiation for the claims it made regarding the greater effectiveness of its Product and also failed to disclose those Products' risks.

6.     As a consequence of Dial's misrepresentations and/or omissions regarding the greater effectiveness, special health benefits, and risks of Dial Complete—perpetuated through Dial's substantially uniform and extensive nationwide marketing campaign—Plaintiffs and the other members of the Class purchased Dial Complete under the false impression that the Product provided a benefit over washing with regular soap and water or with other liquid soaps that do not contain triclosan.

7.     As a result of Dial's extensive and substantially uniform marketing campaign, every consumer who has purchased Dial Complete has been exposed—and as of the commencement of this lawsuit, continued to be exposed—to substantially the same material misrepresentations and/or omissions, the majority of which were included and prominently displayed on the packaging of all Dial Complete products sold as well as in other forms of mass market advertising, prior to purchasing the Product.

8.    As a result of Dial's misrepresentations and/or omissions regarding Dial Complete, Plaintiffs and other members of the Class substantially overpaid for the Product. Had Plaintiffs and the other members of the Class been made aware that Dial Complete did not provide the promised benefit, they would not have purchased Dial Complete at a premium, but, instead, would have paid substantially less for the Product, not purchased the Product at all, or purchased ordinary, less expensive, soaps that did not contain triclosan.

9.    Plaintiffs bring this action on behalf of themselves and on behalf of other similarly-situated consumers across the United States, to halt Dial's dissemination of false and misleading advertising, to correct the false and misleading perception Dial creates in the minds of consumers and the general public, and to obtain redress for Dial Complete purchasers, including Plaintiffs and other members of the Class.  Plaintiffs allege violations of the consumer protection laws, breach of express and implied warranty, and unjust enrichment.

## II.  JURISDICTION AND VENUE

10.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least one Plaintiff and other members of the Class are citizens of states different from Defendant.

11.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because many of the acts and transactions giving rise to this action occurred in this District and because Dial is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution, and sale of its products in this District; does substantial business in this District; and is subject to personal jurisdiction in this District.

12.     By Order dated August 19, 2011, the Judicial Panel for Multidistrict Litigation issued an Order transferring all related Dial Complete cases to this Court for coordinated or consolidated pretrial proceedings, further making venue proper in this district pursuant to 28 U.S.C. § 1407.

13.     This Consolidated Complaint is meant to supersede all other previously-filed complaints.

### III.  PARTIES

*Plaintiffs*

14.     Michele Carter, and at all times relevant to this action has been, a resident of St. Louis, Missouri.  As such, Plaintiff Carter is a Missouri citizen.  Prior to purchasing the Dial Complete starting in Summer 2009, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the St. Louis area, in reliance on those packaging and advertising claims.

15.     Jonathan Cessna is, and at all times relevant to this action has been, a resident of Miami, Florida.  As such, Plaintiff Cessna is a Florida citizen.  Prior to purchasing the Dial Complete starting in 2008, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the Miami area, in reliance on those packaging and advertising claims.

16.     Sonia Herrera is, and at all times relevant to this action has been, a resident of Los Angeles, California.  As such, Plaintiff Herrera is a California citizen.  Prior to purchasing the Dial Complete in early 2009, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the Los Angeles area, in reliance on those packaging and advertising claims.

17.     Jenny Marazzi is, and at all times relevant to this action has been, a resident of Cuyahoga County, Ohio.  As such, Plaintiff Marazzi is an Ohio citizen.  Prior to purchasing the Dial Complete in Fall 2003, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the Cuyahoga County area, in reliance on those packaging and advertising claims.

18.     Kristina Pearson is, and at all times relevant to this action has been, a resident of Cook County, Illinois.  As such, Plaintiff Pearson is an Illinois citizen.  Prior to purchasing the Dial Complete in the spring of 2011, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at a Target store in Streamwood, Illinois, in reliance on those packaging and advertising claims.

19.     Elizabeth Poynter is, and at all times relevant to this action has been, a resident of Little Rock, Louisiana.  As such, Plaintiff Poynter is a Louisiana citizen.  Prior to purchasing the Dial Complete from 2008 through 2012, Plaintiff was exposed to and saw Dial's packaging for Dial Complete, described more fully below, and purchased the Dial Complete at various retail stores in Pulaski County, Louisiana, in reliance on those packaging and advertising claims. .

20.     Sven Vogtland, and at all times relevant to this action has been, a resident of Miami, Florida.  As such, Plaintiff Vogtland is a Florida citizen.  Prior to purchasing the Dial Complete for several years, Plaintiff was exposed to and saw Dial's packaging and advertising claims, and purchased the Dial Complete at various retail stores in the Dade County Florida area, in reliance on those packaging and advertising claims.

21.     As a result of reviewing Dial's pervasive advertising and packaging the Product, Plaintiffs each believed and understood that using Dial Complete would provide benefits above and beyond washing with regular soap and water.

22.     Based on Dial's representations, Plaintiffs each viewed the package and thereafter purchased the Product at premium prices, in excess of other similar soap products.  As a result of those purchases, Plaintiffs each suffered injury in fact and lost money and/or property as a result of the conduct described herein.

23.     In making their purchasing decision, Plaintiffs each relied upon, among other things, the packaging, advertising, and/or other promotional materials which were prepared and approved by Dial and/or its agents and disseminated through its packaging, advertising, and marketing, and/or through local and national advertising media, including Dial's Internet website, media, and in-store advertisements and packaging seen at retail outlets, containing the misrepresentations and/or omissions alleged herein.  Had Plaintiffs known the truth about the Product, they would not have purchased Dial Complete at a premium, but, instead, would have paid less for the Product, purchased ordinary soap, or would not have purchased the Product at all.

*Defendant*

24.     Dial is incorporated in the State of Delaware and is headquartered in Stamford, Connecticut.  Dial is a subsidiary of Henkel AG & Co., KGaA, a Fortune Global 500 company based in Dusseldorf, Germany.  Dial promotes, markets, distributes, and sells a broad range of well-known branded products, including body washes, bar soap, liquid hand soap, and hand sanitizer throughout the United States.

## IV.  SUBSTANTIVE ALLEGATIONS

*Triclosan – The Active Ingredient in Dial Complete*

25.     The active ingredient in Dial Complete was a compound known as triclosan. Triclosan was first patented as an herbicide.  Later, it was found that triclosan had antimicrobial

properties useful for hygiene but limited antiviral and antifungal efficacy. Triclosan was used in some soaps and deodorants since the 1960's and was first used in surgical scrub for medical professionals in the early 1970's. In more recent years, it has been added to many consumer products, including a wide variety of soaps and body washes, toothpaste, clothing, kitchenware, furniture, and toys.

26.     In 2010, the U.S. Food & Drug Administration ("FDA") issued a press release advising consumers that it was reviewing both the safety and effectiveness of products containing triclosan. The agency said it had no evidence that triclosan in antibacterial soaps and body washes provides any benefit over washing with regular soap and water. *See* FDA Consumer Health Information, *triclosan: What Consumers Should Know* (April 2010) *available at* http://www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM206222.pdf ("At this time, the agency does not have evidence that triclosan in antibacterial soaps and body washes provides any benefit over washing with regular soap and water."). In 2013, the FDA issued a proposed rule "after some data suggested that long-term exposure to certain active ingredients used in antibacterial products—for example, triclosan (liquid soaps) and triclocarban (bar soaps)—could pose health risks, such as bacterial resistance or hormonal effects. Under the proposed rule, manufacturers were required to provide the FDA with additional data on the safety and effectiveness of certain ingredients…if they wanted to continue marketing antibacterial products containing those ingredients." *See* FDA News Release, *FDA issues final rule on safety and effectiveness of antibacterial soaps, Rule removed triclosan and triclocarban from over-the-counter antibacterial hand and body washes* (September 2, 2016), *available at* https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm517478.htm.

27.     Because antibacterial hand and body wash manufacturers did not provide the necessary data to establish safety and effectiveness, on September 2, 2016, the FDA issued its final rule establishing that over-the-counter antibacterial soaps and body washes containing certain active ingredients including triclosan could no longer be marketed because "manufacturers did not demonstrate that the ingredients are…more effective than plain soap and water in preventing illness and the spread of certain infections" *See Id.*

28.     The FDA has not been alone in its efforts to warn consumers about triclosan.  The European Union banned triclosan from items expected to come into contact with food and set limits on the amount of triclosan that can be in cosmetics.  Furthermore, countries including Canada, Norway, Germany, Sweden, Finland, and Japan have restricted, required warnings, or advised consumers against use of products containing triclosan.  In October 2008, Norway's Pollution Control Authority ("PCA") recommended a ban on production, imports, exports and trade of consumer products containing triclosan.  In supportive documents provided by the PCA, it was noted that "[t]riclosan has no necessary function in most products."  In August 2009, the Canadian Medical Association asked the Canadian government to ban triclosan use in household products under concerns of creating bacterial resistance and producing dangerous side products (chloroform). Also in 2009, Germany's Federal Institute for Risk Assessment, which reports to the Federal Ministry of Food, Agriculture and Consumer Protection, issued a statement supporting the ban of triclosan except when absolutely necessary.

*The Product and Dial's Advertising*

29.     Dial's misleading marketing of Dial Complete began with a deceptive name—Dial Complete—which implied that it would "completely" protect consumers from germs.

30.     Dial's exhaustive advertising campaign built on this deception.  In truth, Dial had no independent, reliable, or competent support for its claims.

31.     Dial marketed Dial Complete as being a highly effective and doctor-recommended product, claiming on its packaging, for example, that it "kills 99.99% of germs" and that it was "Doctor Recommended," among other claims.

 

32.     On its product packaging and in other marketing and advertising literature and related materials, Dial represented that Dial Complete "KILLS MORE GERMS Than Any Other Liquid Hand Soap."

33.     In the "Complete Facts" section of Dial's website (http://www.dialcomplete.com/complete_facts.html), no longer available, Dial represented that

the Product was "over 1,000 times more effective at killing disease-causing germs than other antibacterial liquid hand soap."

34.     Further, according to representations in the "A Closer Look" section of its website, Dial represented that Dial Complete also had purportedly "been shown to help reduce disease transmission by 50% compared to washing with a plain soap." *Id.* This was an outright lie, as scientific studies have determined that for the prevention of respiratory and gastrointestinal illnesses, there is and was no difference between triclosan-containing products such as Dial Complete versus using plain soap. *Effect of Hand Hygiene on Infectious Disease Risk in the Community Setting: a Meta-Analysis,* American Journal of Public Health, August 2008, Vol. 98, No. 8.

35.     Since 2001, Dial had deceptively and unfairly promoted Dial Complete to consumers—including Plaintiffs and the other Class members—as having special health benefits, including, but not limited to, being over 1,000 times more effective at killing disease-causing germs than other antibacterial liquid hand soaps, killing 99.99% of bacteria, kill 99.9% of illness-causing bacteria, reducing disease transmission by 50% compared to washing with a plain soap, and killing more germs than any other liquid hand soap.

36.     As part of its misrepresentative manner of marketing, promoting, and selling its Dial Complete Products, Dial also deceptively described the Product on its websites at http://dialsoap.com and www.dialcomplete.com—both of which were accessible to the general public.

37.     In the prior version of the Fact Sheet on its website(s), Dial described Dial Complete as "hospital strength formula" that is "over 10 times more effective at killing disease-causing germs than ordinary liquid soap."[1]

38.     Further, on various pages within its website(s), Dial represented that:

a.      "Dial Complete® foaming hand wash kills more germs than any other liquid hand soap" and "Dial Complete® is the #1 doctor recommended liquid hand soap." *See* http://www.dialcomplete.com/index.html;

b.      "Dial Complete® kills 99.99% of bacteria - more than any other liquid hand soap.  It also has been shown to help reduce disease transmission by 50% compared to washing with a plain soap" and "Dial Complete® is over 10x more effective at killing disease causing germs than ordinary liquid soaps." *See* http://www.dialcomplete.com/a_closer_look.html;

c.      "The Dial Complete® patented formula is over 1,000 times more effective at killing disease-causing germs than other antibacterial liquid hand soaps. It also rinses cleaner than other soaps and kills 99.99% of bacteria.", "Dial® Antibacterial Products Do NOT Increase The Risk of Antimicrobial Resistance.", and "The FDA and European Union, after extensive studies over 10 years, have concluded that there is no convincing evidence that the antibacterial ingredient used in Dial® liquid soaps poses a risk to humans or to the environment by inducing or transmitting antibacterial resistance under current conditions of use. (Eu-CCP,2002,2006)." *See* http://www.dialcomplete.com/complete_facts.html

d.      "Dial Complete® Foaming Hand Wash kills more germs than any other liquid hand wash." *See* http://www.dialcomplete.com/protect.html

39.     Dial deceptively and unfairly claimed and implied that Dial Complete's active ingredient, triclosan, enabled Dial Complete to outperform other soap products, thus allowing Dial Complete to perform at the superior levels Dial falsely represented, including killing 99.99% of bacteria, killing  99.9% of illness-causing bacteria, being over 1,000 times more effective at killing disease-causing germs than other antibacterial liquid hand soaps, and reducing transmission of diseases by 50% compared to washing with a plain soap.

---

[1] Since the filing of the initial complaints currently comprising this multidistrict litigation, Dial has altered and/or removed various representations from its online Fact Sheets.

40.     Dial's misleading marketing campaign also included a web-based "Campaign for Clean Hands" as reported by *Ad Week*, previously available at www.adweek.com/aw/content_display/news/e3:5d81a139106682771af41P5881c849a,[2] which featured a website with games, puzzles, a hand wash chart and other interactive features. This promotion included packaging claiming "Superior Germ Kill."

41.     Furthermore, in another of Dial's promotions for the Product, previously available at http://www.youtube.com/watch?v=TjuKuREPGMQ, claimed that Dial Complete provided "the highest level of germ killing action."

42.     To further its deception, Dial claimed that DIAL COMPLETE® is the #1 Doctor recommended antibacterial soap:

| Features | Benefits |
|---|---|
| Hospital-strength formula | Over 10 times more effective than its competition at killing disease-causing germs including staph, strep, E. coli and salmonella. |

43.     Dial's other false and misleading messages included uniform, national advertisements that convey the message that Dial Complete provides protections it did not:



---

[2] Many of the hyperlinks throughout this Consolidated Complaint are no longer active, having been taken down by Dial after it changed the formulation of its product.

44.     Dial also contended, in a video, that Dial Complete, a "one of a kind product," has the highest level of germ-killing action, is the "best-selling foaming hand soap," and that its "5 patents" helped "deliver a 100 to 1000-fold increase in germ-killing activity compared to washing with just plain soap and water," as supported by "a number of papers and studies." http://www.youtube.com/watch?v=ZScDDv7z3_8.

45.     Dial Complete was known to customers only by the representations and omissions that Dial made about it.  If, as is the case here, Dial sold other liquid hand soap products, then customers would have had no reason to buy Dial Complete, and pay a premium for it, unless and until they were exposed to Dial's messages about the Product's purported properties and benefits.

46.     Dial's nationwide advertising campaign for Dial Complete had been extensive and comprehensive.  Dial spent millions of dollars conveying its persistently deceptive message to consumers across the United States.

47.     Dial orchestrated its deceptive Dial Complete advertising campaign by using a variety of media, including television, newspapers, radio, media tours, the Internet, email blasts, video news releases, point-of-sale displays, and on the product's packaging.  As a result of its pervasive and uniform advertising campaign, Dial elevated Dial Complete to become one of the top sellers in the antibacterial product category.

48.     Through its marketing and advertising campaign for Dial Complete, Dial sent an unmistakably clear, but an unconscionably deceptive and unfair, message:  Dial Complete was more effective at killing germs, protecting consumers from germs, and, thus, preventing illness

and promoting good health, than washing with less expensive plain soap and water or other liquid hand soaps.

49.     As a result of Dial's deceptive and misleading messages and omissions about Dial Complete, conveyed directly through its marketing and advertising campaigns, Dial was able to charge a significant price premium for Dial Complete over traditional hand soaps, which it had convinced consumers to pay for a purportedly superior product, as its advertising misleadingly conveys.

50.     Dial's false and misleading representations and omissions regarding Dial Complete were material to consumers, including Plaintiffs and the other members of the Class, and Dial knows that its misleading representations were material in nature.

51.     After the filing of this lawsuit, Dial changed the formulation of Dial Complete, removing triclosan as the active ingredient.

***The False, Misleading, and Deceptive Claims***

52.     Although liquid soaps have been on the market for years, according to Herbert Baum, Dial's Chairman until April 2005, Dial Complete was "the greatest advancement in liquid soap since the production of Liquid Dial in 1988." http://www.happi.com/articles/2001/12/a-new-attitude-soaps-get-serious

53.     Dial's claims about Dial Complete's effectiveness and superiority were false, deceptive, unfair, and unconscionable because there is and was not sufficient, competent and/or reliable scientific evidence and/or substantiation for Dial Complete's effectiveness and superiority claims when the Product was used by the consuming public in real-world settings.

54.     Dial's advertising message also ignored the well-supported fact that washing with soap and water was just as effective as washing with Dial Complete.  Dial Complete contained triclosan and was more expensive than soap that does not contain triclosan.

55.     Dial, however, had no competent, credible, and reliable scientific evidence that was sufficient in quality and quantity, based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate the claims that Dial Complete was over 1,000 times more effective at killing disease-causing germs that other antibacterial liquid hand soaps, killing 99.99% of bacteria, kills 99.9% of illness-causing bacteria, reducing disease transmission by 50% compared to washing with a plain soap, and killing more germs than any other liquid hand soap.

56.     Dial's purported scientific evidence was neither competent nor reliable.  Dial did possess any tests, analyses, research, or studies that had been conducted and evaluated in an objective manner.  To the contrary, Dial's claims appear to be based only on a single, in-house study, conducted at Dial's own "Dial Center for Innovation," which served as Dial's Research & Development Department.

57.     Moreover, Dial conducted this study in 2006; Dial Complete was introduced to the public in 2001, five years before the study was released.  During this time, however, Dial advertised and marketed Dial Complete as indicated above.

58.     Dial's advertisements and packaging for Dial Complete omitted, failed to disclose, and concealed the specific limitations of this "study" including:  (a) that only two different types of bacteria were tested (although Dial's website claims to work on at least four different types); (b) there was no determination as to the development of immunity by the bacteria after repeated use; (c) that only seven to thirteen subjects participated in the study; (d)

15

the study only compared Dial Complete with "Kiss My Face Self Foaming Liquid Soap," without disclosing why that particular soap was chosen; (e) the study did not compare Dial Complete with any other antibacterial soap; (f) the study did not determine that any decrease in pathogens transmitted to food necessarily translates into reducing the rate or severity of specific infections; (g) the study failed to disclose how long the subjects washed with the soap and how many times they did so; and (g) the study called for additional testing.

59.    Given the limitations of Dial's "study," it was unfair and deceptive for Dial to represent that whatever results were achieved in the laboratory setting, would translate into benefits for consumers from use of Dial Complete in real world settings.

60.    Moreover, Dial's study, which was performed by Dial itself, or by a related entity, was far from objective.

61.    In fact, the competent and reliable scientific evidence on this topic indicates that Dial's claims concerning the Product were false, deceptive, unfair, and unconscionable.

62.    Dial's advertising and messaging failed to advise and/or warn consumers—including Plaintiffs and the other members of the Class—that using products containing triclosan could have provided a suitable environment for emergence of antimicrobial drug-resistant species in the community setting or led to the development of bacteria resistant to triclosan.

63.    The Journal of the Annual Meeting of the American Medical Association in 2000 concluded that "the use of common antimicrobials [*i.e.* triclosan] for which acquired resistance has been demonstrated in bacteria as ingredients in consumer products should be discontinued, unless data emerge to conclusively show that such resistance has no impact on public health and that such products are effective at preventing infection."

64.     In March 2004, a study published in the American Journal of Infection Control concluded that, after testing the efficacy of fourteen different hand hygiene agents including a hand wash with 1% triclosan, washing with plain soap and water was more effective than triclosan after one wash.   Sicket-Bennett, Weber, Gergen-Teague, Sobsey, Samsa, Rutala. *American Journal of Infection Control,* pp. 67-77.

65.     Several studies have been published regarding hand cultures in houses using liquid hand soap containing 1.2% triclosan to observe the presence of bacteria.  These studies found that little evidence supported the notion that triclosan soap affords any benefit in the reduction of infectious symptoms, bacterial counts, or types of bacteria on the hands of individuals within the household setting in the developed world. *See* Allison E. Aiello et al., *Relationship between Triclosan and Susceptibilities of Bacteria Isolated from Hands in the Community*, 48 Antimicrob. Agents & Chemother. 2973 (Aug. 2004), available at http://aac.asm.org/content/48/8/2973.full.; Allison E. Aiello et al., *Consumer antibacterial soaps: Effective or just risky?*, Clinical Infectious Diseases. 45 Suppl 2:S137-47 (2007); and Elaine L. Larson et al., *Effect of Antibacterial Home Cleaning and Handwashing Products on Infectious Disease Symptoms*, Annals of Internal Medicine, Vol. 140, No. 5 (March 2004).

66.     On March 20, 2001, Dial received Patent No. US 2,204, 430: *An antibacterial composition that has a 99% reduction in Gram positive and Gram negative bacteria.*  According to the patent application the composition including triclosan was tested against only four bacteria, nowhere near 99% of the bacteria that is known to exist and cause disease in human populations.

67.     Contrary to Dial's position, scientists from the University of Michigan, Columbia University, and Tufts University conducted a review of 27 studies conducted over the past 30

years and determined that soaps containing added ingredients such as triclosan in liquid soap and Triclocarban in bar soap do not show a benefit above and beyond soap that does not contain those ingredients in the real-world environment.  These findings were published in the academic journal *Clinical Infectious Diseases.*

68.    The independent scientists who conducted those studies concluded that:  "[t]he lack of an additional health benefit associated with the use of triclosan-containing consumer soaps over regular soap, coupled with laboratory data demonstrating a potential risk of selecting for drug resistance, warrants further evaluation by governmental regulators regarding antibacterial product claims and advertising.  Further studies of this issue are encouraged." Allison Aiello, *Consumer Antibacterial Soaps: Effective or Just Risky?* Clinical Infectious Diseases 2007; 45; S137-47).

69.    The U.S. Food & Drug Administration (FDA) concurs with these results.  In 2005, the FDA also concluded that antimicrobial soaps do not reduce the risk of illness and infection in the home, yet Dial continued to sell products containing triclosan.

70.    Correspondingly, the Canadian Paediatric Society, the American Medical Association, and other groups have concluded and publicly stated that antibacterial soaps and washes are no more effective than regular soap and water in fighting infection in everyday use. *See Antimicrobial products in the home:  The evolving problem of antibiotic resistance***,** Canadian Paediatric Society (CPS), 11(3) *Paediatrics & Child Health* 169 (2006), available at http://www.cps.ca/english/statements/ID/ID06-02.htm#Reallife;  Tan Litjen et al., *Use of Antimicrobial Agents in Consumer Products*, J.A.M.A. 138(8) *Arch Dermatol.* 1082 (2008).

71.    In an April 8, 2010 "Consumer Update," the FDA definitively stated that: "[a]t this time, FDA does not have evidence that triclosan added to antibacterial soaps and body

18

washes      provides      extra      health      benefits      over      soap      and      water."
http://www.fda.gov/forconsumers/consumerupdates/ucm205999.htm

72.     In the same update, the FDA expressed concerns that triclosan may alter hormone regulation, or could create antibiotic-resistant bacteria.  *Id*.

*73.*     In the FDA's 2013 proposed rule, the FDA stated that since its 1994 evaluation new data and information on triclosan raise concerns "regarding potential risks from systemic absorption and long-term exposure, as well as development of anti-bacterial resistance…." *See* 78 Fed. Reg. 76444 at 76445. In its Final Rule, issued on September 2, 2016, the FDA noted that "[n]ew data suggests that systemic exposure to these active ingredients is higher than previously thought, and new information about the potential risks from systemic absorption and long-term exposure is now available.  New safety information also suggests that widespread antiseptic use could have an impact on the development of bacterial resistance….  The available information and published data…is insufficient to establish the safety of long-term, daily repeated exposure to [triclosan]." *See* 81 Fed. Reg 61106 at 61108.

74.     Although Dial was aware of previous studies regarding the ineffectiveness of triclosan, it continued to sell Dial Complete with triclosan—and marketed it deceptively.

75.     Had Plaintiffs and the other members of the Class been aware of the truth about Dial Complete, they would not have purchased Dial Complete at a premium, but, instead, would have paid substantially less for the Product, not purchased the Product at all, or purchased ordinary, less expensive, soaps that did not contain triclosan.

76.     At all times relevant to this action, Plaintiffs and the other members of the Class, heard, saw, and relied upon various Dial Product claims, promotions, commercials, and advertisements for Dial Complete in making the decision to purchase the Product.

77.     In reliance on the false, unfair, deceptive and/or unconscionable and unfair promotional, package and advertising claims and omissions, Plaintiffs and each of the other members of the Class purchased Dial Complete.   Unbeknownst to Plaintiffs and the other members of the Class at the time of purchase, however, there was and still is no reasonable basis in fact or substantiation for Dial's prior claims that Dial Complete "kills 99.99% of germs, is the "#1 Doctor Recommended" liquid hand wash, "kills more germs than other liquid hand soap is "over 1,000 times more effective at killing disease-causing germs than any other antibacterial liquid hand soaps," and is "over 10 times more effective at killing disease-causing germs than ordinary liquid soap."

78.     Dial's false statements of product quality and effectiveness concerning Dial Complete caused reasonable persons to believe such statements, and did, in fact, cause the Plaintiffs and the other members of the Class to believe and rely upon such statements in making their decisions to buy Dial Complete.

79.     Despite the reasonable expectations of consumers created by its marketing, advertising, and sale of Dial Complete, Dial has engaged in the following routine, albeit wrongful, course of conduct, wherein Dial:

    a.     Represented expressly or by implication that the Product was effective, when it knew that those representations are false;

    b.     Failed to disclose to consumers the reasonably foreseeable risks of using Dial Complete and the material defects in the Product;

    c.     Failed to disclose the nature of the defects to consumers;

    d.     Improperly represented and claimed in its advertisements to possess and rely upon clinical and/or scientific data to support its claims that Dial Complete was as effective and superior in quality as Dial represented, without that supporting data;

f.      Falsely represented and claimed in its advertisements that it possessed and relied upon clinical and/or scientific data, despite the overwhelming evidence that negates Dial's claims regarding Dial Complete.

80.     By engaging in the foregoing course of conduct, Dial caused consumers—including Plaintiffs and the other members of the Class—to be aggrieved and suffer ascertainable losses, in that, among other things, Dial's course of conduct systematically:

a.      Caused Plaintiffs and the other members of the Class to pay a premium for a Product that did not work as promised; and

b.      Caused reasonable consumers like Plaintiffs and the other members of the Class to spend money for a product that they would not have spent but-for Dial's common course of conduct.

81.     Since the filing of this lawsuit, Dial changed the formulation of its product, removing triclosan; however, has not committed to not reintroducing triclosan in Dial Complete.

## V.   CLASS ACTION ALLEGATIONS

82.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the all persons in the United States who purchased Dial Complete containing triclosan.

83.     Excluded the Class are Dial and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; the judges to whom this case is assigned and any immediate family members thereof; anyone who purchased Dial Complete for the purpose of resale; and anyone asserting claims for personal injury.

84.     Certification of Plaintiffs' claims for class-wide treatment on behalf of particular states has been granted and is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

85.     Plaintiffs file this Consolidated Complaint on behalf of a nationwide Class.

21

86.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of each of the Class are so numerous that individual joinder of all members of each of the proposed Class is impracticable.  There are hundreds of thousands, if not millions, of individual purchasers of Dial Complete products.  The precise number of the members of the Class and their addresses are unknown to Plaintiffs, but may be ascertained from Dial's books and records.  Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice consistent with Rule 23 of the Federal Rules of Civil Procedure

87.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class.  All members of the Class were exposed to Dial's deceptive and misleading advertising and marketing claims concerning its Dial Complete products.  Furthermore, common questions of law or fact include:

        a.      whether Dial engaged in the conduct alleged herein;

        b.      whether Dial's practices violate applicable law;

        c.      whether Plaintiffs and the other members of the Class are    entitled       to actual, statutory, or other forms of damages, and other monetary relief; and

        d.      whether Plaintiffs and the other members of the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

Dial engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Class.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

88.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical Class the claims of the other members of the Class because, among other things, all members of the Class were comparably injured through the substantially uniform misconduct described above, were subject to Dial's false, deceptive, misleading, and unfair advertising and marketing practices concerning its Dial Complete products.  Plaintiffs herein are advancing the same claims and legal theories on behalf of themselves and all members of the Class and there are no defenses available to Dial that are unique to the Plaintiffs.

89.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the proposed Class because their interests do not conflict with the interests of the other members of the Class they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs will prosecute this action vigorously.  The Class' interests will be fairly and adequately protected by Plaintiffs and their counsel.  Plaintiffs and Class counsel have been adjudged to satisfy the adequacy requirements.  *See In re: Dial Complete Mktg. and Sales Practices Litig.*, 312 F.R.D. 36, 55-56 (D.N.H. 2015).

90.     **Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**  Dial has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief, as described below, with respect to the members of the Class as a whole.  Specifically, injunctive relief is necessary and appropriate to enjoin Dial from the challenged conduct, including to enjoin Dial from using triclosan as an active ingredient in its Dial Complete product.

91.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy,

and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Dial, so it would be impracticable for members of the Class to individually seek redress for Dial's wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Class' claims and the absence of material differences in the statutes and common laws upon which the members of the Class' claims are based when such claims are grouped as proposed above and below, the Class will be easily managed by the Court and the parties.

## VI.   DIAL IS ESTOPPED FROM ASSERTING STATUTE OF LIMITATIONS-BASED DEFENSES

92.    Dial knew or reasonably should have known that Dial Complete was no more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiffs and the general public, while continually marketing Dial Complete as a superior product. Dial's acts of fraudulent concealment include failing to disclose that Dial Complete is no more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan.

93.     Plaintiffs had no reasonable way to discover or detect Dial's misrepresentations and omissions about the efficacy of Dial Complete until shortly before Plaintiffs filed their respective complaints.

94.     Dial had a duty to disclose that Dial Complete is no more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan.

## VII.   CLAIMS FOR RELIEF

### COUNT I
### Violation of State Consumer Protection Laws

95.     Plaintiffs incorporate by reference Paragraphs 1-94 of this Consolidated Complaint as though fully stated herein.

96.     Plaintiffs bring this claim individually and on behalf of the nationwide Class.

97.     Each member of the Class is entitled to the protection under his or her individual state consumer protection statute,[3] and each consumer protection statute offers similar relief including compensatory damages and restitution.  Plaintiffs are not bringing claims for statutory damages through this lawsuit.

98.     Consumer protection laws uniformly declare that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

99.     Each state has enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising that further allow consumers to bring private and/or class actions.

100.    To the extent required, Plaintiffs have provided Dial notice under the requisite consumer protection statutes.  Dial also has notice of Plaintiffs' claims through the pendency of this litigation.

---

[3] Including those statutes as listed in Appendix A to this Complaint.

101.    In the conduct of trade or commerce regarding the marketing and sale of Dial Complete, Dial engaged in the unfair and deceptive acts or practices described above and incorporated herein.

102.    Dial's representations and advertisements of its Dial Complete products were deceptive and likely to deceive consumers.

103.    Dial knew or should have known that its representations and advertisements of its Dial Complete products, as described above, were untrue or misleading.

104.    Dial used or employed such deceptive and unlawful acts or practices with the intent that Plaintiffs and Class members rely thereon or otherwise be deceived. And Dial's deceit was successful because Plaintiffs and Class members relied on Dials representations and omissions and purchased the products.

105.    Plaintiffs and Class members did rely upon Dial's misrepresentations and omissions in purchasing Dial Complete, and would not have purchased Dial's Products at the prices they paid, or not at all, had they known the truth.

106.    As a result of Dial's misrepresentations and omissions, as alleged herein, Plaintiffs and Class members did not receive the benefit of their bargain in purchasing Dial Complete products.  As a result of Dial's conduct, Plaintiffs and Class members were damaged in an amount to be proven at trial.

**<u>COUNT II</u>**
**Breach of Express Warranty**

107.    Plaintiffs incorporate by reference Paragraphs 1-94 of this Consolidated Complaint as though fully stated herein.

108.    Plaintiffs bring this claim individually and on behalf of the nationwide Class.

109.    Plaintiffs and Class members formed a contract with Dial when it purchased Dial Complete.  The terms of that contract include the promises and affirmations of fact Dial made on Dial Complete's packaging and through marketing and advertising, including Dial's promise that Dial Complete products were more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan, as more fully described above.  This marketing and advertising constituted express warranties and became part of the basis of the bargain, and were part of the standardized contract between Class members and Dial.

110.    Dial made these representations with the intent that Plaintiffs and Class members rely upon them, and Plaintiffs and Class members did rely upon them to their detriment.

111.    As a result, Plaintiffs and Class members suffered damages, in an amount to be determined at trial.

112.    Dial is and has been on notice of Plaintiffs' and Class members' claims for violations of its express warranties.

## COUNT III
## Breach of Implied Warranty

113.    Plaintiffs incorporate by reference Paragraphs 1-94 of this Consolidated Complaint as though fully stated herein.

114.    Plaintiffs bring this claim individually and on behalf of the nationwide Class.

115.    Plaintiffs and Class members purchased Dial Complete expecting it to be of merchantable quality and fit for the purpose for which it was intended.

116.    By representing that Dial Complete was more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan in its marketing and advertising, as described herein, Dial impliedly warranted that that the Product was of merchantable quality and fit for the use for which it was intended.

117. Dial breached the warranty implied at the time of sale in that Plaintiffs and Class members did not receive goods that were more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan as represented and thus, the goods were unfit for their intended use and not of merchantable quality as promoted, marketed, advertised, packaged, or sold.

118. Dial intended consumers to purchase its Products, and at all times knew consumers would purchase its Products and marketed its Products toward consumers.

119. As a result of Dial's breach of implied warranties, Plaintiffs and Class members were damaged in an amount to be determined at trial.

120. Dial is and has been on notice of Plaintiffs' and Class members' claims.

## COUNT IV
### Injunctive Relief

121. Plaintiffs incorporate by reference Paragraphs 1-94 of this Consolidated Complaint as though fully stated herein.

122. Plaintiffs bring this claim individually and on behalf of the Class.

123. Dial has acted or refused to act on grounds generally applicable to the Plaintiffs and the other members of the Class, thereby making final injunctive relief appropriate.

124. Dial's conduct, as more fully set forth herein has demonstrated a willful disregard for proven scientific facts in a clear attempt to sell a product that is no more effective than other, less expensive products which do not contain triclosan.

125. Although Dial has changed the formulation of its Product, it has not represented that it will not reintroduce triclosan in its Dial Complete product.

126.    Injunctive relief is necessary and appropriate to enjoin Dial from the challenged conduct, including to enjoin Dial from using triclosan as an active ingredient in its Dial Complete product.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf other members of the Class described in this Consolidated Complaint, respectfully request that:

A.      the Court certify the Class pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), and adjudge Plaintiffs and their counsel to be adequate representatives of that class;

B.      the Court enter an Order requiring Dial to pay Plaintiffs' and the other members of the Class' damages;

C.      the Court enter an Order awarding restitution and disgorgement of Dial's revenues arising from its conduct alleged above, or any other appropriate remedy in equity, to Plaintiffs and the other members of the Class;

D.      the Court enter an Order awarding injunctive relief as permitted by law or equity;

E.      the Court enter an Order awarding Plaintiffs, individually and on behalf of the other members of the Class, their expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

F.      the Court enter an Order awarding to Plaintiffs individually and on behalf of the other members of the Class, pre- and post-judgment interest, to the extent allowable; and

G.      for such other and further relief as may be just and proper.

## IX.   JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Consolidated Complaint so triable.

Dated:  December 26, 2018

Respectfully submitted,

/s/ Lucy J. Karl
Lucy J. Karl
NH Bar No. 5547
**SHAHEEN & GORDON, P.A.**
107 Storrs Street
Concord, New Hampshire  03302
Telephone: (603) 225-7276
Facsimile: (603) 225-5112
lkarl@shaheengordon.com

*Plaintiffs' Interim Lead Counsel*

*Plaintiffs' Executive Subcommittee*

Richard J. Arsenault
**NEBLETT, BEARD & ARSENAULT**
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana  71309
Telephone: (216) 621-8484
Facsimile: (216)771-1632
rarsenault@nbalawfirm.com

Adam J. Levitt
**DICELLO LEVITT & CASEY LLC**
10 North Dearborn Street, 11th Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900
alevitt@dlcfirm.com

John R. Climaco
**CLIMACO, WILCOX, PECA, & GAROFOLI CO., L.P.A.**
55 Public Square, Suite 1950
Cleveland, Ohio  44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com

Charles E. Schaffer
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania  19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

Eric D. Holland
**HOLLAND LAW FIRM**
St. Louis, Missouri  63101
Telephone: (314) 241-8111
Facsimile: (314) 241-5554
eholland@allfela.com

### *Plaintiffs' Steering Committee*

Daniel E. Becnel, Jr.
**BECNEL LAW FIRM, LLC**
P.O. Drawer H
106 West Seventh Street
Reserve, Louisiana  70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445
dbecnel@becnellaw.com

Christopher M. Ellis
**BOLEN ROBINSON & ELLIS, LLP**
202 South Franklin, 2nd Floor
Decatur, Illinois  62523
Telephone: (217) 429-4296
Facsimile: (217) 329-0034
cellis@brelaw.com

Jordan L. Chaikin
**CHAIKIN LAW FIRM PLLC**
12800 University Drive
Suite 600
Fort Myers, Florida 33907
Telephone: (239) 470-8338
jordan@chaikinlawfirm.com

David C. Rash
**LAW OFFICES OF DAVID C. CRASH**
1655 North Commerce Parkway, Suite 303
Weston, Florida 33326
Telephone: (954) 914-7116
david@drcrashlaw.com

James C. Shah
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
35 East State Street
Media, Pennsylvania  19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshah@sfmslaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that, on December 26, 2018, she caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


By:    /s/ Lucy J. Karl
Lucy J. Karl