# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN RE DIAL COMPLETE MARKETING ) | Case No. 11-md-2263-SM |
| AND SALES PRACTICES LITIGATION ) | |
| ) | (MDL DOCKET NO. 2263) |
| ) | |
| ) | (ALL CASES) |

## STATEMENT OF INTEREST OF THE UNITED STATES

JOSEPH H. HUNT
Assistant Attorney General

GUSTAV W. EYLER
Director
Consumer Protection Branch

Kendrack D. Lewis
Trial Attorney
Consumer Protection Branch
Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044
202-353-3883
kendrack.lewis@usdoj.gov

*Counsel for the United States*

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

LEGAL STANDARD ................................................................................................................... 1

I. Appearance of the United States ................................................................................................ 1

II. Standard for Evaluating Class-Action Settlements ................................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND ................................................................... 3

ARGUMENT .................................................................................................................................. 4

I. The Proposed Award To Class Counsel Would Compensate Attorneys For Securing
   Largely Illusory Injunctive Relief At The Expense Of Unnamed Plaintiffs ........................... 4

    A.  The Proposed Injunctive Relief Offers No Material Benefit To The Class
   That Dial Did Not Voluntarily Undertake Years Ago ............................................................ 5

    B. The Proposed Injunctive Relief Provides No Meaningful Difference Beyond What
   Recent Changes In The Law Already Require ....................................................................... 5

II. Class Counsel's Fee Request Is Unreasonable Given The Lack Of Meaningful Value
    The Injunction Provides To The Class .................................................................................... 8

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bezdek v. Vibram USA Inc.*,
 79 F. Supp. 3d 324 (D. Mass. 2015) ............................................................................. 2, 10

*Coutlin v. Young & Rubicam Puerto Rico, Inc.*,
 124 F.3d 331 (1st Cir. 1997) ............................................................................................. 10

*Grok Lines, Inc., v. Paschall Truck Lines, Inc.*,
 No. 14 C 8033, 2015 WL 5544504 (N.D. Ill. Sept. 18, 2015) ............................................. 7, 9

*Guoliang Ma v. Harmless Harvest, Inc.*,
 No. 16-CV-7102(JMA)(SIL), 2018 WL 1702740 (E.D.N.Y. Mar. 31, 2018) ......................... 7

*In re Colgate-Palmolive Softsoap Antibacterial Handsoap Marketing and Sales Practices Litig.*, No. 12-md-2320-PB, 2013 D.N.H. 038 (D.N.H. March 18, 2013) ............................ 6

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12-md-2320-PB, 2015 WL 7282543 (D.N.H. Nov. 16, 2015) ............................ 2, 9

*In re Dry Max Pampers Litig.*,
 724 F.3d 713 (6th Cir. 2013) ............................................................................................. 5

*In re Fidelity/Micron Securities Litigation*,
 167 F.3d 735 (1st Cir. 1999) ............................................................................................. 9

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fir Litig.*,
 56 F.3d 295 (1st Cir. 1995) ............................................................................................. 8, 9

*Koby v. ARS National Services, Inc.*,
 846 F.3d 1071 (9th Cir. 2017) ..................................................................................... 5, 6, 7

*Weinberger v. Great Northern Nekoosa Corp.*,
 925 F.2d 518 (1st Cir. 1991) ............................................................................................. 8

**FEDERAL STATUTES**

21 U.S.C. § 310.545 ............................................................................................................. 6

21 U.S.C. § 352(a)(1) ........................................................................................................... 7

21 U.S.C. § 355 ..................................................................................................................... 6

28 U.S.C. § 517 ..................................................................................................................... 1

28 U.S.C. § 1711 ................................................................................................................... 1

28 U.S.C. § 1715 .......................................................................................................................... 1

**RULES**
Fed. R. Civ. P. 23 ................................................................................................................... 2, 10

**REGULATIONS**
21 C.F.R. § 330.10 ...................................................................................................................... 6

81 Fed. Reg. 61106 .................................................................................................................. 6, 7

**OTHER AUTHORITIES**
Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide
    for Judges 18 (3d ed. 2010) ................................................................................................. 4

Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005) ................................. 1

Class Action Fairness Act of 2005, S. Rep. No. 109-14 (2005) ...................................... 1, 2, 10.

Howard M. Erichson, *Aggregation As Disempowerment: Red Flags in Class Action Settlements*,
    92 Notre Dame L. Rev. 859 (2016) ..................................................................................... 8

4 William B. Rubenstein, *Newberg on Class Actions* § 13:61 (2014) ........................................ 2

**INTRODUCTION**

The United States respectfully submits the following Statement of Interest regarding the proposed class action settlement in the above-captioned matter. The proposed settlement contemplates hefty, uncontested attorney's fees based in part on obtaining forward-looking injunctive relief of illusory value. The Court should reject the call to compensate attorneys at the expense of unnamed plaintiffs for any portion of work that provides little or no actual value to the class. To the extent the settlement agreement directs money away from uncompensated class members, it should not be approved.

The United States receives notice of all proposed class action settlements under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711–1715 ("CAFA"). While the United States does not share the parties' extensive knowledge of the record or the strengths and weaknesses of the claims asserted, the Department of Justice's Consumer Protection Branch litigates on behalf of consumer interests and has relevant experience in bringing consumer harm to light and crafting appropriate remedies. After an examination of the proposed settlement and applicable law, the United States recommends rejecting the settlement as currently structured to ensure the maximum cash benefit to class members, as set out below.

**LEGAL STANDARD**

**I.      Appearance of the United States**

Congress authorized the Attorney General to send "any officer of the Department of Justice . . . to any State or district in the United States to attend to the interests of the United States in a suit pending in a court in the United States." 28 U.S.C. § 517. CAFA requires class action defendants to notify the Attorney General and state officials of proposed class action settlements, a duty that contemplates a role in the settlement-approval process for the Attorney General. 28 U.S.C. § 1715. While the CAFA notice provision does not expressly grant specific authority or impose explicit

1

obligations upon federal or state officials, 28 U.S.C. § 1715(f), the Act's legislative history shows that Congress intended the notice provision to enable public officials to "voice concerns if they believe that the class action settlement is not in the best interest of their citizens." The Class Action Fairness Act of 2005, S. Rep. No. 109-14, at 5 (2005) ("S. Rep."). Congress expected that CAFA notifications would "provide a check against inequitable settlements" and "deter collusion between class counsel and defendants to craft settlements that do not benefit injured parties." S. Rep. at 35. The United States thus offers its views here.

## II.   Standard for Evaluating Class Action Settlements

In determining whether to approve a settlement as "fair, reasonable, and adequate" under Rule 23(e)(2), a district court must consider the portion of the settlement that will go to attorney's fees. *See, e.g.*, 4 William B. Rubenstein, *Newberg on Class Actions* § 13:61, at 506 (5th ed. 2014) ("If the fees set in the settlement agreement appear unrealistically high, that provision casts doubt on the settlement."). This requirement is explicit in the recent amendments to Rule 23, which took effect on December 1, 2018. Fed. R. Civ. P. 23(e)(2)(A-D). Under Rule 23, courts evaluating a class action settlement must consider whether "the relief provided for the class is adequate, taking into account . . . the terms of any proposed award of attorney's fees." *Id.* at 23(e)(2)(C)(iii). The amended rule makes clear that the relief to the class "is a significant factor in determining the appropriate fee award." Fed R. Civ. P. 23(e)(2), Advisory Committee Note (2018 amendment).

In the First Circuit, a "Rule 23(e) analysis entails a wide-ranging review of the overall reasonableness of the settlement, and does not rely on any fixed checklist of considerations." *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12-md-2320-PB, 2015 WL 7282543, at *9 (D.N.H. Nov. 16, 2015). "This analysis requires careful scrutiny of the proposed settlement in order to fulfill [the court's] role as a fiduciary for the absent class members." *Id.* (citation and quotation omitted). "There is a presumption that a settlement is within the range of

2

reasonableness when sufficient discovery has been provided and the parties have bargained at arms-length." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass. 2015) (citation and quotation omitted). "This is the threshold required to survive the preliminary review stage. However, more than presumptive fairness is required for final approval, which necessarily entails a more fully informed examination." *Id.* (citation and quotation omitted).

## FACTUAL AND PROCEDURAL BACKGROUND

On January 23, 2012, plaintiffs filed a class action against defendant, The Dial Corporation, for allegedly misrepresenting its Dial Complete hand soap as more effective at killing germs over other hand soap brands that did not contain triclosan. *Consolidated Am. Compl.* (Dkt 32). On March 27, 2017, the Court granted plaintiffs' motion for class certification, certifying six state-wide classes. *Order Granting Class Certification* (Dkt 225). On December 28, 2018, the parties moved for preliminary approval of the proposed settlement. *Mem. for Settlement Approval* (Dkts 239-1). The Court granted the parties' motion and scheduled a fairness hearing for May 29, 2019. *Order Granting Prelim. Approval* (Dkt 242).

The proposed settlement establishes a settlement fund of $7.4 million. *Att'y Fee Mot.* (Dkt 244-1) at 9. Of this amount, Dial will pay class members a total of $2,325,000 for the alleged price premium consumer plaintiffs paid in buying Dial's hand soap over other non-antibacterial brands. *Id.* at 10. As part of the settlement agreement, claimants without proof of purchase would receive $0.27 for each claim for up to 30 claims (maximum payout of $8.10). *Id.* at 9. Claimants with receipts would receive $0.27 for every claim submitted. *Id.* If the total claims amount exceeds $2,325,000, each class member's claim would be reduced pro-rata. *Settlement Agreement* (Dkt 239-2) at 13. Any cash remaining in the fund would be distributed as a *cy pres* award to charity. *Id.* at 15.[1]

---

[1] Based on communications with the parties, it is the understanding of the United States that a *cy pres* distribution is "very unlikely."

3

Besides monetary relief, the settlement purportedly provides class members with injunctive relief. *Settlement Agreement* (Dkt 239-2) at 12. Dial agrees to remove triclosan from its products and shall not advertise that its product "Kills 99.9% of Germs" for five years, or until there is a change in law regarding triclosan's effectiveness. *Id.* Class counsel claims that the value of this injunctive relief to consumers over a five-year period is approximately $25 million. *Att'y Fee Mot.* (Dkt 244-1) at 9. Class counsel are seeking $1,925,000 in attorney's fees based on the monetary relief, and $1.9 million for securing the injunctive relief, for a total of $3,825,000. *Id.* at 10. The $1.9 million in attorney's fees related to the injunctive relief would be paid out of a part of the settlement fund separate from the money that can be used to pay class members. *Settlement Agreement* (Dkt 239-2) at § 3.2.1.1. Dial has agreed not to contest the bifurcated attorney's fee amounts. *Id.* at § 8.2.1. Class counsel's proposed fee awards together represent more than 50 percent of the cash value of the settlement, but only about 12 percent of what the parties claim to be the total $32.4 million value of the settlement.

## ARGUMENT

**I. The Proposed Award To Class Counsel Would Compensate Attorneys For Securing Largely Illusory Injunctive Relief At The Expense Of Unnamed Plaintiffs.**

While the parties contend the proposed injunctive relief delivers "substantial value" to the class members, the reality is that Dial will not be required to change its current practices. Moreover, the injunction merely replicates existing FDA mandates and provides no real additional benefit to the class. *See Mem. for Settlement Approval* (Dkt 239-1) at 8. To assess the fairness of a proposed settlement, a court must "[q]uestion whether injunctive relief will truly benefit class members." Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 18 (3d ed. 2010) (noting that injunctive relief is a hot-button indicator of "potential unfairness" in a settlement). In performing this inquiry, courts should ask three key questions: (1) How much is the injunction worth to the class? (2) Will the class likely suffer future harm without the injunction? and (3) Does the injunctive relief do more than restate the obligation that the defendant already has under

existing law? *Id.* at 22. This inquisition helps to determine not only the actual value of the injunctive relief to the class but also whether the injunction is an appropriate remedy. *Id.* Applying this framework here shows that the purported injunctive relief is virtually worthless to the class given the U.S. Food & Drug Administration's 2013 proposed rule and 2016 final rule concerning triclosan.

### A. The Proposed Injunctive Relief Offers No Material Benefit To The Class That Dial Did Not Voluntarily Undertake Years Ago.

The proposed injunctive relief is meaningless to the class because it does not require Dial to change any of its current practices. In late 2014, Dial "actually changed the formulation of Dial Complete to use a different active ingredient" instead of triclosan. *Pls.' Reply Mem. for Class Certification* (Dkt 216) at 5 n.7. This change occurred soon after FDA issued a proposed rule regarding consumer antiseptic hand and body washes. Dial, like other companies not involved in this litigation, replaced triclosan as the active ingredient in its products and revised the "Kills 99.99% of Germs" label claim to state instead that Dial Complete "Kills 99.99% of Bacteria." *Mem. for Settlement Approval* (Dkt 239-1) at 8. For the past four years, consumer class members have had access to triclosan-free Dial hand soaps minus the challenged labeling claims without giving up any rights. *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 719 (6th Cir. 2013) (finding class received "nearly worthless injunctive relief," including a reinstated refund program already available to class members without class counsel's assistance and without releasing away their rights). The injunction, therefore, does not obligate Dial "to do anything it was not already doing." *Koby v. ARS National Services, Inc.*, 846 F.3d 1071, 1080 (9th Cir. 2017) (explaining injunctive relief to the class bears "no real value" when defendant must continue with business changes it "voluntarily adopted" years before the settlement).

### B. The Proposed Injunctive Relief Provides No Meaningful Difference Beyond What Recent Changes In The Law Already Require.

Not only did Dial already remove triclosan from its soaps, but the law now prohibits using that ingredient in such products. In September 2016, FDA issued a final rule that prohibited

5

manufacturers from using triclosan and certain other ingredients in over-the-counter hand wash soaps. *Safety and Effectiveness of Consumer Antiseptics; Topical Antimicrobial Drug Products for Over-the-Counter Human Use*, 81 Fed. Reg. 61106 (Sept. 6. 2016). As part of the Rule, FDA found that triclosan was among 19 active ingredients not generally recognized as safe and effective, and that consumer antiseptic soap containing triclosan would be misbranded and illegal to distribute in interstate commerce. *Id.* at 61125. Thus, any future harm the class likely would have suffered from Dial's attempted use of triclosan effectively ended with the FDA's regulatory action.

As this Court previously explained, "[t]he FDA's monograph . . . is forward looking.[2] It will determine the permissible content of future product labels. It will establish the permissible concentrations of triclosan in consumer hand soaps, if it permits use of the ingredient at all." *Order Denying Def.'s Mot. To Dismiss* (Dkt 80) at 14 (quoting *In re Colgate-Palmolive Softsoap Antibacterial Handsoap Marketing and Sales Practices Litig.*, No. 12-md-2320-PB, 2013 D.N.H. 038, 19 (D.N.H. March 18, 2013) ("Colgate-Palmolive") (internal quotations omitted). Since that ruling, FDA determined that it would not permit the use of triclosan at all in hand soaps, and any label claim falsely touting benefits of triclosan would violate the misbranding provisions of the FDCA. *See* 21 U.S.C. § 310.545(b).

Plaintiffs seem to argue that the economic benefit of removing the claim "Kills 99.9% of Germs," which Dial formerly used to market triclosan-containing products, continues to be worth about $25 million in value over five years to the class despite the product reformulation. Plaintiffs do not explain why anyone would expect Dial to reinstate the "germs" claim now that the law prohibits use of the active ingredient with which the claim was associated. Parties must prove the value of

---

[2] Under the Food, Drug, and Cosmetic Act ("FDCA"), the FDA must first approve a new drug as safe and effective for its intended use before the new drug can enter interstate commerce. 21 U.S.C. § 355. "For over-the-counter drugs, the FDA publishes the conditions under which categories of drugs are safe, effective, and appropriately labeled (*i.e.*, not 'misbranded') in final regulations known as 'monographs.' 21 C.F.R. § 330.10." *Def.'s Mot. To Dismiss* (Dkt ) at 17.

6

injunctive relief where it is used to show value to the class. *See Koby*, 846 F.3d at 1079 (proving the injunction's value is on the settlement proponents). Because Dial's products no longer contain triclosan and the allegedly false claim has been removed, class members here face no current or future harm, and seem to gain no benefit from the proposed injunction. *See Koby*, 846 F.3d at 1079-80 (concluding no evidence of future harm led to class members deriving no benefit from injunctive relief). Nor have plaintiffs presented evidence that reasonably shows any "risk or likelihood" of Dial reinstating the challenged claim. *See, e.g.*, *Guoliang Ma v. Harmless Harvest, Inc.*, No. 16-CV-7102(JMA)(SIL), 2018 WL 1702740, at *7 (E.D.N.Y. Mar. 31, 2018) (finding injunctive relief meaningless without any evidence showing that defendant "would seek to reintroduce the [allegedly false] labels in the future").

The current active ingredient in Dial's hand soaps is benzalkonium chloride. In its final rule, FDA deferred a decision on that ingredient for one year to allow time for additional testing to determine safety and effectiveness. 81 Fed. Reg. 61106. In theory, the proposed injunctive relief would prevent Dial from marketing its current formulation as able to kill 99.9% of "germs." But the record here does not appear to indicate whether such a labeling claim would be untrue as to the new formulation, nor does it suggest any likelihood that Dial would reinstate that claim after voluntarily removing it. *Koby*, 846 F.3d at 1080 (explaining defendant was "unlikely to revert back to its old ways" regardless of the settlement's injunction because defendant freely did so for business reasons, including future litigation risks, and "not because of any court- or settlement-imposed obligation").

Rather than impose a new obligation on Dial, the injunction's labeling provision only formalizes Dial's previous decision, consistent with FDA rulemaking, to stop using the "germs" claim and the active ingredient on which that claim was based – the same decision made by other companies not involved in this lawsuit. Any new labeling claims by Dial must comply with existing FDCA restrictions against false and misleading labeling. *See Grok Lines, Inc.*, v. *Paschall Truck Lines, Inc.*, No.

7

14 C 8033, 2015 WL 5544504, at *5 (N.D. Ill. Sept. 18, 2015) (noting that the "purported burdens" of a proposed injunction on defendant "are nothing more than ordinary steps that any business might take own its own in trying to comply" with the requirements of a certain law); *see also* 21 U.S.C. § 352(a)(1) ("If its label is false or misleading," the drug is misbranded). As one commentator put it, "[t]he fact that class counsel and the defendant struck a deal with an injunctive component does not necessarily indicate that the injunctive remedy accomplishes anything useful." Howard M. Erichson, *Aggregation As Disempowerment: Red Flags in Class Action Settlements*, 92 Notre Dame L. Rev. 859, 878 (2016). In sum, the proposed injunction essentially mirrors Dial's current practices and existing law. Plaintiffs' discussion of what value should be assigned to the proposed injunction seems to ignore these facts.

**II.     Class Counsel's Fee Request Is Unreasonable Given The Lack Of Meaningful Value The Injunction Provides To The Class.**

The proposed settlement would unreasonably compensate class counsel with a hefty, uncontested $1.9 million fee award for securing injunctive relief of dubious value at best. *Settlement Agreement* (Dkt 239-2) at 37. As explained above, Dial and other companies revised the challenged labeling claims and reformulated triclosan-containing consumer soaps years ago. Class counsel has not convincingly demonstrated that these changes in business practice were a direct result of the settlement, and the law now prohibits Dial from reintroducing that ingredient in such products. The purported concessions here are not meaningful to the class, because the injunction does not actually force Dial to "alter its marketing practices," as class counsel asserts. *Att'y Fee Mot.* (Dkt 244-1) at 20-21. Instead, the injunction merely permits Dial to carry on with the same practices it voluntarily assumed in late 2014.

In the First Circuit, "[t]he court's role as the guarantor of fairness obligates it not to accept uncritically what lawyers self-servingly suggest is reasonable compensation for their services." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). Rather, district courts are

to "scrutinize fee applications carefully." *Id.* Courts may calculate attorney's fees using either the percentage of fund method or by fashioning a lodestar. *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fir Litig.*, 56 F.3d 295, 307 (1st Cir. 1995). Under the percentage of fund method, "the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation." *Id.* at 305. "A court arrives at the lodestar by determining the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." *Id.* Regardless of the method selected, "[r]easonableness is the touchstone, and a request that promises to yield an unreasonable result must be trimmed back or rejected outright." *In re Fidelity/Micron Securities Litigation*, 167 F.3d 735, 737 (1st Cir. 1999). "Because each common fund case presents its own unique set of circumstances, trial courts must assess each request for fees and expenses on its own terms." *Id.*

Here, class counsel contends its "success in achieving substantial injunctive relief for the Class" warrants a $1.9 million fee for that aspect of the settlement on top of the $1.9 million fee related to the monetary relief component of the settlement. *Att'y Fee Mot.* (Dkt 244-1) at 9. As set out above, the facts do not support this contention. This case is in a different posture than *Colgate-Palmolive*, a previous class action where this court found that a similar injunction "provide[d] a meaningful benefit to the Class." *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12-md-2320-PB, 2015 WL 7282543, at *10 (D.N.H. Nov. 16, 2015). At the time *Colgate-Palmolive* was decided, FDA had not yet issued its final rule regarding triclosan. *Id.* While the defendant in that case also had discontinued the use of triclosan, the settlement's injunctive relief provided "a binding, and otherwise absent, limit on Colgate's ability to reintroduce triclosan" into its hand soaps. *Id.* That limit on triclosan use is no longer "absent," and class members no longer face the potential recurrence of the alleged harm. As one court emphasized, "an injunction can be a powerful, long-lasting tool secured by a settlement in circumstances where it bars a party from doing something harmful that it has been

9

doing, is currently doing, and will continue to do. But a settlement agreement that on paper appears to be a dam holding back a flood is superfluous if there is nothing to hold back." *Grok Lines, Inc.*, 2015 WL 5544504, at *3.

In determining an appropriate fee award, the preeminent consideration is the result obtained for the class members. *Coutlin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 338 (1st Cir. 1997). Given the change in law, class members will receive little to no benefit from the proposed injunction, and class counsel's uncontested fee request, therefore, is not reasonable. The proposed settlement would compensate counsel with more than 50 percent of the total $7.4 million settlement fund. Courts in the First Circuit typically award attorney's fees between "the range of 20 to 30 percent, with 25 percent as the benchmark." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015) (citation and quotation omitted). Class counsel's fee request is twice that size.

Under the settlement agreement, the $1.9 million in contemplated injunction-related attorney's fees (the "Rule 23(b)(2) Component" of the settlement fund) will not revert to Dial should the Court decline to award this sum to class counsel. It is not clear, however, under the settlement agreement as written that the money would go to class members, either. Under the agreement, "[p]ayment of settlement compensation to Settlement Class Members shall be made from the *Rule 23(b)(3) Component* of the Settlement Fund." *Settlement Agreement* (Dkt 239-2) at § 3.31 (emphasis added). The agreement does not specifically state that class member payments can be made from the Rule 23(b)(2) component of the fund. Instead, the plain terms of the agreement could be read as directing leftover Rule 23(b)(2) component money to charity as a *cy pres* award. *Id.* at § 3.31. If that is correct, the settlement should be rejected in its current form. Any money in the settlement fund tied to either the Rule 23(b)(2) or Rule 23(b)(3) "components" that is not used for other proper purposes should be paid to consumers plaintiffs until individual claimants have been fully compensated.

10

**CONCLUSION**

Class counsel seeks $1.9 million in fees specifically related to obtaining largely illusory injunctive relief for the class. The settlement seems designed to provide this "Rule 23(b)(2)" money either to class counsel or a *cy pres* award and not to class members. For these reasons, the Court should reject the settlement as currently structured because it is not fair, reasonable, and adequate under CAFA and Rule 23(e).

May 10, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

GUSTAV W. EYLER
Director
Consumer Protection Branch

/s/ Kendrack D. Lewis
KENDRACK D. LEWIS
Trial Attorney
Consumer Protection Branch
Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044
202-353-3881
kendrack.lewis@usdoj.gov

*Counsel for the United States*

11

## CERTIFICATE OF SERVICE

I certify that on this 10th day of May, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of New Hampshire using the CM/ECF system. All counsel will be notified through that system.

/s/ Kendrack D. Lewis
Kendrack D. Lewis
Trial Attorney
Consumer Protection Branch