# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| In Re: Dial Complete Marketing and Sales Litigation (MDL No. 2263) | ) ) ) ) )   MDL Docket No. 11-md-2263-SM )   ALL CASES ) ) |

## BRIEF OF ATTORNEYS GENERAL OF ARIZONA, ARKANSAS, FLORIDA, IDAHO, INDIANA, LOUISIANA, OKLAHOMA, MICHIGAN, MISSOURI, RHODE ISLAND, TENNESSEE, AND TEXAS AS *AMICI CURIAE* OPPOSING FINAL APPROVAL OF PROPOSED SETTLEMENT

Mark Brnovich
 *Attorney General*
Oramel H. (O.H.) Skinner (*pro hac pending*)
 *Solicitor General*
Keena Patel (*pro hac pending*)
 *Assistant Attorney General*
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004
(602) 542-5025
o.h.skinner@azag.gov

*Counsel for Amicus Curiae*

*Arizona Attorney General's Office*
Bryan K. Gould, Esq.
CLEVELAND, WATERS AND BASS, P.A.
Two Capital Plaza
P.O. Box 1137
Concord, NH  03302-1137
603-224-7761
gouldb@cwbpa.com

*Local Counsel for Amicus Curiae*
*Arizona Attorney General's Office*

May 14, 2019

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

INTEREST OF AMICI CURIAE ................................................................................................... 2

ARGUMENT .................................................................................................................................. 3

    I.    THE COURT SHOULD REJECT THE PROPOSED SETTLEMENT, WHICH IS FATALLY IMBALANCED ........................................................................................... 5

        A.    The Proffered Injunctive Relief Has No Value And Cannot Support Settlement Approval ........................................................................................................... 6

        B.    The Remaining Settlement Value Is Impermissibly Imbalanced ..................... 8

CONCLUSION ............................................................................................................................. 10

# **INTRODUCTION**

The Attorneys General of Arizona, Arkansas, Florida, Idaho, Indiana, Louisiana, Oklahoma, Michigan, Missouri, Rhode Island, Tennessee, and Texas—having been notified of this settlement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 *et seq.* ("CAFA"), reviewed the Preliminary Approval Motion, Dkt. 239, and conferred with counsel for the parties about the Proposed Settlement's terms—make this filing to present their unique perspective on how the Proposed Settlement fails to properly serve the interests of class members.[1]

The Attorneys General urge the Court to reject the Proposed Settlement, which is fatally imbalanced and fails to direct the appropriate share of the settlement value to consumer class members. Under the Proposed Settlement, class members get an essentially meaningless injunction—that class-counsel "values" at an inflated $25 million, even though Defendant stopped doing long ago what the injunction requires, and the FDA has since foreclosed any change of heart—and a small fraction of the available cash (~$2.9 million). At the same time, class counsel takes over 60% of the available cash (~$4.4 million), and Defendant receives a broad, nation-wide release of any claims related to its product (not just those claims related to this case).

Put simply, the Proposed Settlement is not fair, reasonable, or adequate under Rule 23(e) and pertinent federal precedent. The Court should look past the essentially worthless injunctive relief and send the parties back to negotiate a proper division of the settlement proceeds, ensuring that class members receive the appropriate percentage of what is already on the table.

---

[1] The Attorneys General submit this brief only as *amici curiae* as to the settlement approval question now before the Court; the Attorneys General take no position on the underlying merits and this submission is made without prejudice to any State's ability to enforce its consumer protection laws or otherwise investigate claims related to the issues here in dispute.

**INTEREST OF AMICI CURIAE**

Amici's interest here arises from two responsibilities.  *First*, as their respective states' chief law enforcement or legal officers, the Attorneys General have an overarching responsibility to protect their States' consumers.  *Second*, they have a responsibility to protect consumer class members under CAFA, which prescribes a role for Attorneys General in the class action settlement approval process.  *See* 28 U.S.C. § 1715 (Pub. L. No. 115-281); *see also* S. REP. 109-14, 2005 U.S.C.C.A.N. 3, 6 (requirement "that notice of class action settlements be sent to appropriate state and federal officials," exists "so that they may voice concerns if they believe that the class action settlement is not in the best interest of their citizens."); *id.* at 34 ("notifying appropriate state and federal officials ... will provide a check against inequitable settlements"; "Notice will also deter collusion between class counsel and defendants to craft settlements that do not benefit the injured parties.").

The Attorneys General submit this brief to further these interests, speaking on behalf of citizen consumers who will be harmed by the Proposed Settlement, under which class members would be left releasing their claims for a small fraction of the available settlement cash as well as an essentially worthless injunction.  This brief is a continuation of the ongoing efforts by state Attorneys General to protect consumers from class action settlement abuse, which have produced meaningful settlement improvements for class members.  *See, e.g.*, *Allen v. Similasan Corp.*, No. 12-cv-376, Dkts. 219, 223, 257, 261 (S.D. Cal.) (after state attorney general coalition filed amicus and district court rejected initial settlement, revised deal was reached, increasing class' cash recovery from $0 to ~$700,000); *Cowen v. Lenny & Larry's, Inc.*, No. 17-cv-01530, Dkts.

94, 110, 117 (N.D. Ill.) (involvement of government officials, including state attorneys general, produced revised settlement that increased class' cash recovery from $350,000 to ~$900,000).

## ARGUMENT

It is important for the Court to step in here, exercise its independent duty on behalf of consumer class members (who face substantial disadvantages in the class action settlement approval process), and reject the Proposed Settlement.

Courts play an important role in weighing the reasonableness of proposed settlements, stepping in to police the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees." *Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th Cir. 2003). It "is essential" that courts apply "careful scrutiny" throughout this review process, because to do otherwise and solely "rel[y] on counsel's opinion" would improperly "foster[] rubber stamping by the court[s]" and defeat the intent of judicial review of class action settlements. *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1150 (11th Cir. 1983); *see also Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016) (noting that district courts "must carefully scrutinize" settlements).

"Courts have long recognized that 'settlement class actions present unique due process concerns for absent class members.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Taylor v. Sturgell*, 553 U.S. 880, 901 (2008) (Rule 23 protections are "grounded in due process"). Indeed, while "[c]lass counsel are duty bound to represent the best interests of class members," "the interests of class members and class counsel nearly always diverge[.]" *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013); *see also Evans v.*

3

*Jeff D.,* 475 U.S. 717, 733 (1986) (recognizing that "the possibility of a tradeoff between merits relief and attorneys' fees" is often implicit in class action settlement negotiations). Class counsel has an incentive to obtain the maximum possible fee award, but that fee almost invariably comes directly out of the class members' pockets. Ultimately, "[a]lthough under the terms of each settlement agreement[] attorney[s'] fees technically derive from the defendant rather than out of the class' recovery, in essence the entire settlement amount comes from the same source." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996).

And defendants typically have little incentive to police these deals or try to counterbalance the conflict between class counsel and the class. "[A] defendant who has settled a class action lawsuit is ultimately indifferent to how a single lump-sum payment is apportioned between the plaintiff's attorney and the class." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813, 820 (2003). To a defendant, the fee award and the class award "represent a package deal," *Johnston*, 83 F.3d at 246, with the defendant ultimately "interested only in the bottom line: how much the settlement will cost him,'" *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 712 (7th Cir. 2015); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Litig.*, 55 F.3d 768, 819–20 (3d Cir. 1995) ("'a defendant is interested only in disposing of the total claim asserted against it; ... the allocation between the class payment and the attorneys' fees is of little or no interest to the defense.'").

## I. THE COURT SHOULD REJECT THE PROPOSED SETTLEMENT, WHICH IS FATALLY IMBALANCED

Plaintiffs cannot show that the distribution under the Proposed Settlement is fair, reasonable and adequate under Rule 23.[2] Under the settlement, class counsel would get ~$4.4 million of the $7.4 million cash payment (more than 60%),

The Proposed Settlement attempts to justify the lopsided cash division here by dividing the settlement (and fee award) into two components based upon the relief in the settlement.

The first cash payment to class counsel is based on the Proposed Settlement's supposed injunctive relief under the Rule 23(b)(2). Under this part of the Proposed Settlement, Defendant promises to do what it is already doing: (1) it will "not reintroduce triclosan as an active ingredient in Dial Complete," and (2) it will "not use an advertising or labeling claim that Dial Complete 'Kills 99.99%* of Germs' as that product is currently formulated." Dkt. 239-3 at 12. Class counsel values Defendant's promise to keep doing these things at $25 million and the Proposed Settlement awards class counsel $1.9 million in attorneys' fees "for their efforts in securing the injunctive relief separate and apart from the relief they secured for the Class related to payment of the alleged price premium claims." Dkt. 239-2 at 8-9.

The second cash payment to class counsel is based on the $5.5 million gross monetary damages component of the Proposed Settlement under Rule 23(b)(3). After once again paying class counsel for its legal fees and costs for this component of the settlement (totaling ~$1.9 million), as well as the cash fee for the would-be injunctive relief and the notice costs, only

---

[2] Proponents bear the burden to establish this element. *See, e.g.*, *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (class action settlement proponents "'bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate.'"); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 196 (5th Cir. 2010) ("the burden is on the settlement proponents to persuade the court that the agreement is fair, reasonable, and adequate for the absent class members who are to be bound by the settlement.").

5

~$2.3 million is likely to be left for potential disbursement to the class members.[3]  For those class members with proof of purchase of Dial Complete Foaming Liquid Hand Soap, a claim can be submitted for all packages at $0.27 per package.  Without proof of purchase, members can only claim up to 30 packages at $0.27 per package for a total of $8.10.  Recovery is reduced pro rata if a large number of claims are submitted and any funds remaining after claims distribution are allocated to *cy pres* recipients.

Thus, through the bifurcated relief under the Proposed Settlement, class counsel gets ~$4.4 million of the total $7.4 million cash payment (more than 60%).  This disproportionate division of settlement proceeds cannot be justified and is fatal to the Proposed Settlement.

### A. The Proffered Injunctive Relief Has No Value And Cannot Support Settlement Approval

The supposed $25 million in value to class members for the injunctive relief is essentially illusory.  Under the Rule 23(b)(2) injunctive component of the Proposed Settlement, Defendant promises that, for five years, it will not (1) use triclosan in Dial Complete, or (2) claim in advertising or labeling that Dial Complete "Kills 99.99% of Germs" as the product is currently formulated.  But, long before the Proposed Settlement, on December 16, 2013, the Food and Drug Administration ("FDA") issued a proposed rule about the use of triclosan in antiseptic hand and body washes. Dkt. 239-2 at 8.  Faced with this proposed rule, Defendant "reformulated its Dial Complete product, replacing triclosan as the active ingredient . . . and also revised a number of claims on the packaging and associated advertising on the now-reformulated Dial Complete product, including revising the 'Kills 99.99% of Germs' claim to state that Dial Complete 'Kills

---

[3] While ~$2.4 million in claims have been made, discussions with the parties have confirmed that the claims will be reduced due to the size of the fees and notice costs, meaning the agreement's $2.3 million floor will likely be what the class gets.

6

99.99% of Bacteria.*" *Id.*  And it cannot be disputed that in 2016—long before the settlement here—the FDA issued a final rule banning the marketing of over-the-counter consumer antiseptic wash products with triclosan.  Press Release, U.S. Food & Drug Admin., FDA Issues Final Rule on Safety and Effectiveness of Antibacterial Soaps (Sept. 2, 2016).  Thus, consistent with the new FDA regulation, Defendant is already doing what the Rule 23(b)(2) component of the Proposed Settlement would require of Defendant for the next five years.  In other words, the injunction provides to the class members nothing like the claimed $25 million in value.

The Ninth Circuit's decision in *Koby v. ARS National Services, Inc.* demonstrates the appropriate judicial treatment of a settlement with injunctive conditions like the ones here.  846 F.3d 1071, 1079-81 (9th Cir. 2017).  In *Koby*, the defendant, a debt collection agency, voluntarily adopted a new voicemail pre-settlement that required "its employees to disclose that they work for [the agency], that [the agency] is a debt collector, and that they are calling to collect a debt" in the midst of litigation with plaintiffs.  *Id.* at 1074.  A year and a half later, a settlement agreement was reached in which the defendants agreed to injunctive relief that consisted of continuing to use the new voicemail for a period of two years.  *Id.* at 1075.  On appeal, the Ninth Circuit determined that "the settlement's injunctive relief [was] of no real value. [It did not] obligate [the agency] to do anything it was not already doing. It merely require[d] [the agency] to continue using the same voicemail message it voluntarily adopted…[The agency] took that step for its own business reasons (presumably to avoid further litigation risk), not because of any court- or settlement-imposed obligation. [The agency] would therefore be unlikely to revert back to its old ways regardless of whether the settlement contained the stipulated injunction." *Id.* at 1080.

This case presents almost the exact same scenario as in *Koby*, even without considering that the FDA has foreclosed any chance of reversion in Dial's use of the offending ingredient. Injunctive relief may well be an appropriate resolution to certain class actions, as an injunction assures that the conduct at issue will not be continued. But, the injunctive relief in this particular case largely rests on actions the Defendants already took years ago and is effectively blocked by government action from reverting in the future. "In other words, [Defendant] and the named plaintiffs provide[] no evidence to suggest that many, if any, members of the proposed class would derive a benefit from obtaining the injunctive relief afforded by the settlement." *Koby*, 846 F.3d at 1080. As such, the supposed $25 million in value from the Rule 23(b)(2) injunctive component of the Proposed Settlement is illusory and should be disregarded by the Court in weighing the Proposed Settlement.[4]

**B.     The Remaining Settlement Value Is Impermissibly Imbalanced**

With the illusory value of the proffered injunction unmasked, it is clear that the rest of the deal value (~$7.4 million in cash in exchange for a broad release by class members) is divided in a fatally imbalanced way.

First, Defendant gets a broad release of claims from the class. Consistent with the Proposed Settlement, class counsel filed a Second Amended Complaint transforming the ten-State class into a nation-wide class. Then, the Proposed Settlement releases Defendant from all claims by any member of the nation-wide class (named and unnamed) relating to the Dial

---

[4]  The expert report (Dkt. 246) offered at settlement to support the value of the proposed injunctive relief has no bearing on this point and cannot rehabilitate the injunctive relief's lack of value. Even assuming the report properly established the consumer value of first stopping the actions in question, the report does not explain why this value is attributable to the settlement, as opposed to the actions taken by Dial and/or the FDA in 2013 and 2016; the expert report does nothing to rebut the conclusion that, whatever value the changes might have had when originally taken, that value is not attributable to the Proposed Settlement.

Complete Product—not just the claims in this action, but to any aspect of its production more generally. *See* Dkt. 239-3 at 31-32. As stated in the release, class members agree to give up all "claims of any nature whatsoever" (except bodily injury) against the Defendant "in connection with Dial's distribution, sale, purchase, labeling, packaging, marketing, advertising, and/or use of the Dial Complete Product." *Id.*[5]

Second, in exchange for this release, the Defendant has put $7.4 million in cash on the table. But, under the Proposed Settlement, class counsel gets ~$4.4 million of this amount—$1.9 million for the Rule 23(b)(2) relief, $1.925 million for the Rule 23(b)(3) relief, and an estimated $573,141 in costs—double the amount paid to class members. While the sweeping release of claims and the amount of monetary compensation may be appropriate under a different allocation, the Proposed Settlement is unfair and unbalanced here where class counsel walks away with the lion's share of the cash alongside essentially "worthless injunctive relief." *Koby*, 846 F.3d at 1073; *see also In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) (imposing costs on class to obtain relief "that already is on offer," which "duplicates a remedy that most buyers already have received, and that remains available to all members of the putative class," does "not adequately protect[] the class members' interests.").

In the absence of a fundamental rebalancing, which the Court cannot accomplish on its own as part of the review process, the Proposed Settlement must be rejected. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The settlement must stand or fall in its entirety," as no court has "the ability to 'delete, modify or substitute certain provisions.'"); *Brooks v. Georgia State Bd. of Elections*, 59 F.3d 1114, 1119–20 (11th Cir. 1995) ("'We are not

---

[5] This is in stark contrast to injunctive relief obtained in enforcement actions by Attorneys General, which generally does not require consumers to waive or surrender claims.

free to delete, modify or substitute certain provisions of the settlement. The settlement must stand or fall as a whole.'" (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331–32 (5th Cir. 1977)).

## **CONCLUSION**

For the reasons stated herein, the Attorneys General ask the Court to reject the Proposed Settlement and deny the related motions.


Dated: May 14, 2019

Respectfully submitted,

MARK BRNOVICH
ARIZONA ATTORNEY GENERAL

By: /s/ Bryan K. Gould

| | |
|---|---|
| Oramel H. (O.H.) Skinner (*pro hac pending*)<br>  *Solicitor General*<br>Keena Patel (*pro hac pending*)<br>  *Assistant Attorney General*<br>Office of the Arizona Attorney General<br>2005 N. Central Avenue<br>Phoenix, Arizona 85004<br>(602) 542-5025<br>o.h.skinner@azag.gov<br><br>*Counsel for Amicus Curiae*<br>*Arizona Attorney General's Office* | Bryan K. Gould, Esq. (NH Bar #8165)<br>CLEVELAND, WATERS AND BASS, P.A.<br>Two Capital Plaza<br>P.O. Box 1137<br>Concord, NH  03302-1137<br>603-224-7761<br>gouldb@cwbpa.com<br><br>*Local Counsel for Amicus Curiae*<br>*Arizona Attorney General's Office* |

**ALSO SUPPORTED BY:**

**LESLIE RUTLEDGE**
**ARKANSAS ATTORNEY GENERAL**
323 Center Street, Ste 200
Little Rock, AR 72201

**ASHLEY MOODY**
**FLORIDA ATTORNEY GENERAL**
302 W. Washington Street, 5th Fl.
Indianapolis, IN 46204

**LAWRENCE WASDEN**
**IDAHO ATTORNEY GENERAL**
700 W. Jefferson Street., Ste 210
P.O. Box 83720
Boise, ID 83720

**CURTIS T. HILL**
**INDIANA ATTORNEY GENERAL**
302 W. Washington Street, 5th Fl.
Indianapolis, IN 46204

**JEFF LANDRY**
**LOUISIANA ATTORNEY GENERAL**
P.O. Box 943005
Baton Rouge, LA 70804

**MIKE HUNTER**
**OKLAHOMA ATTORNEY GENERAL**
313 NE 21st Street
Oklahoma City, OK 73105

**DANA NESSEL**
**MICHIGAN ATTORNEY GENERAL**
P.O. Box 30212
Lansing, MI 48909

**ERIC SCHMITT**
**MISSOURI ATTORNEY GENERAL**
207 W. High Street
P.O. Box 899
Jefferson City, MO 65102

**PETER F. NERONHA**
**RHODE ISLAND ATTORNEY GENERAL**
150 S. Main Street
Providence, RI  02903

**HERBERT H. SLATERY III**
**TENNESSEE ATTORNEY GENERAL**
P.O. Box 20207
Nashville, TN  37202

**KEN PAXTON**
**TEXAS ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX  78711

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of New Hampshire using the CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by the court's CM/ECF system.

/s/ Bryan K. Gould
Bryan K. Gould, Esq.